235 N.J. Super. 22 (1989)
561 A.2d 618
DOLLY BAYLOR, APPELLANT,
v.
NEW JERSEY DEPARTMENT OF HUMAN SERVICES, DIVISION OF PUBLIC WELFARE, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1989.
Decided June 26, 1989.
*25 Before Judges PETRELLA, SHEBELL and LANDAU.
Angelica Anaya-Allen argued the cause for appellant (Passaic County Legal Aid Society, attorneys; Angelica Anaya-Allen, on the brief).
James T. Hill, Deputy Attorney General, argued the cause for respondent (Peter N. Perretti, Jr., Attorney General, attorney; Mary C. Jacobson, Deputy Attorney General, of counsel; James T. Hill, on the brief).
Legal Services of New Jersey filed a brief amicus curiae (Nancy Goldhill, on the letter brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Appellant, Dorothy Baylor, appeals from the Final Decision of the State Division of Public Welfare (the Division) affirming the calculation of Aid to Families with Dependent Children (AFDC) benefits which her family receives. In calculating the benefits paid, the Passaic County Board of Social Services (Board) failed to apply the $50 "disregard" for "child support" under the federal AFDC statute (the disregard provision), to the Title II Social Security Dependents' Insurance benefits (dependents' benefits) received by appellant's children.
On December 10, 1987, appellant requested a fair hearing to determine whether the AFDC benefits received by her family had been properly calculated. On March 21, 1988, a fair hearing was conducted by an Administrative Law Judge (ALJ). On April 15, 1988, the ALJ rendered her Initial Decision, ruling *26 that Social Security dependents' benefits constitute "child support" subject to the "disregard" under N.J.A.C. 10:82-4.17, and that the Board had improperly failed to disregard the first $50 of those benefits when calculating the family's monthly AFDC benefits. The ALJ ordered that appellant's benefits be recalculated retroactively. The June 1, 1988 Final Decision of the Director of the Division rejected the ALJ's decision, and held that the Board correctly calculated appellant's AFDC benefits without the disregard.
Appellant and her two minor children have been long-standing recipients of monthly AFDC benefits. A 1983 court order against the father required him to pay child support. The father, now a disabled person receiving Title II Social Security Disability Insurance benefits, lives apart from appellant and their children. As dependents of a disabled person, each child receives monthly dependents' benefits of $31. In calculating monthly AFDC benefits for the family, the Board has reduced the benefits by the full $62 of dependents' benefits the children receive.
In its Final Decision, the Division stated, "[r]eview of the code of Federal Regulations at 45 CFR 302.51(b) reveals clearly that only amounts collected as support by the IV-D Agency are subject to the $50 disregard. Accordingly, the recommended decision by the ALJ cannot be accepted." An agency's final decision will not be set aside unless it is shown that "it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies express or implied in the relevant statute." East Windsor Reg'l. Bd. of Ed. v. State Bd. of Ed., 172 N.J. Super. 547, 552 (App.Div. 1980). Here, the facts are undisputed and we need only determine if the Division's conclusion is in accord with relevant federal and state statutes and regulations. Any agency's determination of a question of law is subject to de novo review by the reviewing court. Grancagnola v. Planning Bd., 221 N.J. Super. 71, 75 n. 5 (App.Div. 1987), citing *27 Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93 (1973).
Neither state nor federal regulations define "child support;" therefore, it is necessary to review the federal statutory and regulatory scheme and case law before concluding whether the dependents' benefits received by petitioner's two children are subject to the $50 disregard.
AFDC is a public assistance program created and financed by the federal government under Title IV of the Social Security Act of 1935, 42 U.S.C.A. § 301 et seq., Motyka, et al. v. McCorkle, et al., 58 N.J. 165, 168 (1971). Although state participation in the AFDC program is voluntary, those that choose to participate must comply with the terms of the Social Security Act and regulations. Shea v. Vialpando, 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120, 125 (1974); Barrera v. Dept. of Institutions and Agencies, 150 N.J. Super. 41, 45 (App.Div. 1977). "A `state plan' consists of all the statutes and regulations which create and provide for the administration of programs of assistance." Communications Workers v. Union Cty. Welfare Bd., 126 N.J. Super. 517, 524 (App. Div. 1974).
Under the scheme prescribed by federal law, state AFDC plans must provide that all income and resources available to any child or relative claiming AFDC benefits be considered in determining the applicant's need level. 42 U.S.C.A. § 602(a)(7). However, some forms of "income" must be "disregarded," or not counted as family income, when the state makes a "need" determination. 42 U.S.C.A. § 602(a)(8)(A). "Once the state has made this need determination, a benefit award is calculated, and AFDC payments are made to the AFDC recipient." Todd v. Norman, 840 F.2d 608, 609 (8th Cir.), reh'g and reh'g en banc den., 840 F.2d 608 (8th Cir.1988).
In enacting the Deficit Reduction Act of 1984, Pub.L. No. 98-369, § 2640, 98 Stat. 494, 1145-1146 (1984), Congress created the following child support disregard provision at issue in *28 this appeal, 42 U.S.C.A. § 602(a)(8)(A)(vi) ("the federal disregard provision"):
A State plan for aid and services to needy families with children must 
(8)(A) provide that ... in making the determination under paragraph (7), the State agency 
(vi) shall disregard the first $50 of any child support payments ... with respect to the dependent child or children in any family applying for or receiving aid to families with dependent children (including support payments collected and paid to the family under section 657(b) of this title).... [Emphasis supplied].
This requires state AFDC plans to provide that the first $50 of "child support" be disregarded when determining an applicant's need for assistance pursuant to § 602(a)(7).
Under N.J.S.A. 44:10-3(c), the Commissioner of the Department of Human Services is directed
[t]o provide that, in determining eligibility for financial assistance and the amount of assistance to be granted, there shall be taken into consideration all other income and resources of the dependent child and of the parent, parents, or other relatives with whom such child is living, except that, in making such determination, there shall be disregarded the amounts of income and resources required by Federal law as a condition of Federal financial participation.... [Emphasis supplied].
The state "child support" disregard provision is found at N.J.A.C. 10:82-4.17:
The first $50.00 of any child support payments received on behalf of a dependent child or children by any family applying for or receiving AFDC shall be disregarded. Such child support payments shall include disregarded child support (DCS) payments paid the family through the child support and paternity process and direct support payments received by the eligible unit which represent a current monthly support obligation. These monies are disregarded in determination of initial eligibility, maximum income eligibility, prospective needs test, and the grant computation. The total amount of child support disregarded shall not exceed $50.00 per month per eligible unit. [Emphasis supplied].
The Division found that "only amounts collected as support by the IV-D Agency are subject to the $50 disregard," citing 45 C.F.R. § 302.51(b). A "IV-D" agency is a state agency created pursuant to Part D of the federal AFDC statute, 42 U.S.C.A. §§ 651-665. Part D establishes the federal scheme for, among other things, state collection of child and spousal support for persons receiving AFDC. 42 U.S.C.A. *29 § 652(a)(1). Under that scheme, the State must designate an agency to administer the state plan; the plan itself must provide that the State will undertake to collect "assigned" child support from legally liable persons. 42 U.S.C.A. § 654(3) and § 654(4)(B). As a prerequisite to eligibility, AFDC recipients must assign to the State any rights they might have to support from any other person. 42 U.S.C.A. § 602(a)(26); 45 C.F.R. § 232.11(a)(1). In New Jersey, an application for AFDC benefits operates as such an assignment. N.J.S.A. 44:10-2. Child support payments assigned to the State are collected by the state IV-D agency. Child support collected by the IV-D agency must be paid to the State for distribution as prescribed in 42 U.S.C.A. § 657. 42 U.S.C.A. § 654(5)(A); 45 C.F.R. § 302.50(a).
Title 42, U.S.C.A. § 657(b) itself gives directions for the distribution of those support payments collected by the IV-D agency, indicating in pertinent part that the first $50 of the child support collected by the agency be paid to AFDC families without affecting their eligibility for AFDC benefits. This instruction is repeated in the corresponding federal regulation, 45 C.F.R. § 302.51(b), which states in relevant part:
The State plan shall provide as follows:
....
(b) The amounts collected as support by the IV-D agency pursuant to the State plan for children and the parents of such children who are current recipients of aid under the State's title IV-A plan and for whom an assignment under § 232.11 of this title is effective shall be distributed as follows:
(1) Of any amount that is collected in a month which represents payment on the required support obligation for that month, the first $50 of such amount shall be paid to the family. [Emphasis supplied].
Title 45, C.F.R. § 232.11(a)(1) codifies the statutory requirement that as a condition of eligibility for AFDC, applicants must assign to the State "any rights to support from any other person...."
Hence, in citing the above regulation in its decision, the Division essentially posited that only child support payments *30 assigned to and collected by the State were subject to the federal disregard. Thus, it follows that the federal disregard provision would not apply to Social Security dependents' benefits because, (1) under 42 U.S.C.A. § 407, the right to those benefits are not transferable or assignable and (2) they are not collected by the IV-D agency, but paid directly to the dependents.
This issue has not been raised previously in New Jersey. The parties agree that the term "child support" is not defined in the state public assistance regulations (N.J.A.C. 10:81-1.1 et seq.) or the federal AFDC statutes or regulations (42 U.S.C.A. § 601 et seq., 45 C.F.R. § 205 et seq.).
Terms used in an AFDC act should be given their ordinary and well-understood meaning. See State v. Pleva, 203 N.J. Super. 178, 188 (App.Div.), certif. den. 102 N.J. 323 (1985); accord 3A Sands, Sutherland Statutory Construction, § 72.03 at 582 (4th ed. 1986) ("Statutory Construction"). If it is clear and unambiguous, no further construction is required. Sutherland Statutory Construction, supra, § 72.03 at 582.
Appellant contends that the Division's interpretation of the federal disregard provision is contrary to the plain language of 42 U.S.C.A. § 602(a)(8)(A)(vi), which requires states to disregard "the first $50 of any child support payments ... received ... with respect to the dependent child or children ... (including support payments collected and paid to the family under section 657(b) of this title)...." It argues that the federal disregard provision by its specific language applies to "any child support payments" received with respect to children receiving AFDC benefits.
While we agree with the conclusion of the Division's Final Decision, its reasoning conflicts with its own regulation which states that the "child support payments" subject to the disregard "shall include disregarded child support (DCS) payments paid the family through the child support and paternity process and direct support payments received by the eligible *31 unit which represent a current monthly support obligation...." N.J.A.C. 10:82-4.17 (emphasis supplied). By its own terms, the state plan characterizes as child support items other than child support assigned to the State and collected and distributed by the IV-D agency. The provision does not limit "child support payments" to these two types of support. It states that they shall be included as child support. Hence, these regulations demonstrate that the "child support" subject to the disregard provision is not restricted to payments assigned to the State and passed through the IV-D agency.
Appellant argues that dependents' benefits must be classified as "child support benefits," because their purpose is to provide financial support when parents are deceased or disabled and unable to support their children by working. See Jimenez v. Weinberger, 417 U.S. 628, 634, 94 S.Ct. 2496, 2500, 41 L.Ed.2d 363, 369 (1974); Davis v. Richardson, 342 F. Supp. 588, 593 (D.Conn. 1972), aff'd 409 U.S. 1069, 93 S.Ct. 678, 34 L.Ed.2d 659 (1972). We agree that dependents' benefits can for certain purposes properly be classified as child support benefits; however, we find no evidence that the federal disregard provision requires such application. Clearly, federal policy underlying the Social Security and AFDC laws is unrelated to state or local laws on marital or family matters flowing from the state's power to regulate domestic relations. Davis, 342 F. Supp. at 593.
We have reasoned that, under state law, dependents' benefits may satisfy a divorced father's child support obligation as the benefits are not gratuities but were earned by the wage earner and that during his or her period of unemployment they are insurance payments substituting for lost earning power. Potter v. Potter, 169 N.J. Super. 140, 148 (App.Div. 1979). Indeed, the overwhelming majority of state courts that have considered the impact of dependents' benefits on parents' court-ordered child support obligations are in agreement on this issue. Todd v. Norman, 840 F.2d at 614 (Lay, C.J., dissenting).
*32 Only one state appellate court, Georgia, has based its interpretation of the federal disregard provision on state domestic relations cases. Ledbetter v. Foster, 180 Ga. App. 696, 350 S.E.2d 31, 33 (Ct.App.), cert. den. (Sup.Ct. Nov. 26, 1986) (unpublished). Since Georgia courts had already defined child support in family law actions as including Social Security dependents' benefits and since there was nothing in the AFDC law precluding a similar definition of child support in the disregard provision, dependents' benefits were ruled subject to the disregard in Georgia. Ibid.
We are unable to arrive at such a result under the New Jersey State Plan. N.J.S.A. 44:10-3(c) limits the Commissioner of the Department of Human Services to disregard only "the amounts of income and resources required by Federal law as a condition of Federal financial participation...." Even if under federal law a state might arguably elect to disregard the first $50 of dependents' benefits received with affecting federal participation, we are not satisfied that it is required to do so. Cf. Stroop v. Bowen, 870 F.2d 969 (4th Cir.), reh'g den. (May 31, 1989) (unpublished).
The Stroop court said:
We perceive no distinction between support derived directly from a father's wages and support provided indirectly through Title II payments. In both cases, it is the father, a wage earner, whether current or past, who provided the support. The money to support the child comes directly through the father or indirectly through insurance he earned when working. [Id. at 974].
We do not disagree with this reasoning. See Potter, 169 N.J. Super. at 148. However, merely because dependents' benefits may under such reasoning be credited by a state towards a court-imposed child support obligation, it does not necessarily follow that Congress meant to include Social Security dependents' benefits in its definition of "child support payments," under the disregard provision of the federal AFDC statute.
In Todd v. Norman, 840 F.2d at 611, the court noted that Congress recognized a difference between "Social Security benefits" and "child support" payments, relying on the legislative *33 history of 42 U.S.C.A. § 602(a)(38) which revised the definition of a family unit and which spoke "in terms of `Social Security benefits' and `child support' as separate and distinct sources of income." 840 F.2d at 611, citing S.Rep. No. 494, 97th Cong., 2d Sess. 47, reprinted in 1982 U.S.Code Cong. & Admin. News 781, 823. We suggest that the interpretation of federal statutes is best left to the federal courts. We accept the reasoning of the Todd majority as the more persuasive authorities on the present issue.
We are admonished that we should construe the disregard provision so as to avoid serious doubts about its constitutionality. See International Machinists v. Street, 367 U.S. 740, 749, 81 S.Ct. 1784, 1789, 6 L.Ed.2d 1141, 1150 (1961). It is urged that the Division's interpretation raises equal protection questions about the disregard provision. See Stroop v. Bowen, 870 F.2d at 973; Todd v. Norman, 840 F.2d at 613 (Lay, C.J., dissenting). If possible, federal statutes are to be construed so as to avoid serious doubt as to their constitutionality. International Machinists v. Street, 367 U.S. at 749, 81 S.Ct. at 1789, 6 L.Ed.2d at 1150.
Appellant contends that the Division's refusal to apply the child support disregard to Social Security dependents' benefits violates the equal protection provisions of the state and federal constitutions (N.J. Const. (1947), Art. I, par. 1 and U.S. Const., Amend. XIV, respectively). She argues that there is no rational basis for the distinction the Division has drawn between child support paid by a working parent and child support paid by the Social Security disability insurance program on behalf of a disabled parent.
In Todd v. Norman, 840 F.2d at 611-612, it is stated:
The closest statutory reference in pari materia is an earlier form of the child support disregard, formerly codified in large part at 42 U.S.C. § 657 (1976). The legislative history of that statute leaves little doubt that the child support disregard was established to encourage AFDC recipients to assist the state in establishing paternity and collecting child support. [Citation omitted]. The district court, after imputing the same purpose to the present statute, indicated *34 that no such incentive is intended for AFDC recipients whose children receive Child's Insurance Benefits, because the state is barred by law from collecting such benefits. We are persuaded by the district court's reasoning. The problem addressed by the child support disregard is the collection of child support from absent parents. Child's Insurance Benefits simply are not part of that problem. [Footnote omitted].
We are satisfied that the above-stated legislative public purpose supplies a constitutionally sufficient, rational basis for distinguishing between support payments from an absent parent and benefits paid on behalf of a disabled parent under Social Security laws. See Bowen v. Gilliard, 483 U.S. 587, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987).
It may be argued that if our Legislature chose to maximize AFDC benefits by permitting the Commissioner to disregard those amounts of income and resources to the full extent permitted under federal law, as opposed to only those required under federal law as a condition of participation, it would be more equitable to the beneficiaries of AFDC. Such action, however, is a legislative and not a judicial function of government, as it requires a consideration and balancing of the views of all the people by elected representatives; thus, we may not reverse the Division's Final Decision on this basis.
Affirmed.
PETRELLA, P.J.A.D., dissenting.
Because I conclude that the State Division of Public Welfare (the Division) improperly failed to apply the $50 "disregard" for "child support" under the Aid to Families with Dependent Children (AFDC) statute (the disregard provision), to the Title II Social Security Dependents' Insurance benefits (dependents' benefits) received by appellant's children, I am constrained to dissent.
The factual background is adequately outlined in the majority opinion. In my view the Division's interpretation of the federal disregard provision is contrary to the plain language of 42 U.S.C.A. § 602(a)(8)(A)(vi), which requires States to disregard *35 "the first $50 of any child support payments ... received ... with respect to the dependent child or children ... (including support payments collected and paid to the family under section 657(b) of this title)...." By its specific language the federal disregard provision applies to "any child support payments" received with respect to children receiving AFDC benefits. Congress parenthetically included, but did not limit the disregard to child support payments assigned to and collected by the IV-D agency. Nor did it specify that the child support payments subject to the disregard had to be received by the state IV-D agency, only that they had to be "... received ... with respect to the dependent child or children...." 42 U.S.C.A. § 602(a)(8)(A)(vi). Similarly, the language of the distribution regulation, 45 C.F.R. § 302.51(b), and the corresponding federal statute, 42 U.S.C.A. § 657(b), in no way suggest that the scope of the federal disregard provision was modified or limited. In my view the distribution regulation and its related statute are meant, and must be construed, to make sure that the disregard, which has its genesis in 42 U.S.C.A. § 602(a)(8)(A)(vi), is applied.
While the disregard provision tells States that they must disregard $50 of child support payments when computing the applicant's need level, the distribution regulation and the corresponding statutory provision instruct the States how to distribute child support assigned to and collected by the state IV-D agency. The statutory provision on distribution appears in a special section (Part D) of the federal AFDC statute ("Child Support and Establishment of Paternity"), which focuses on the process and mechanism for enforcing absent parents' support obligations, locating absent parents, establishing paternity, and obtaining child support and spousal support. 42 U.S.C.A. § 651. The Division fails to support its contention that the federal disregard provision has been modified by the distribution provisions of the federal statute and regulations.
As the majority opinion points out, the Division's position conflicts with the state disregard regulation which states that *36 the "child support payments" subject to the disregard "shall include disregarded child support (DCS) payments paid the family through the child support and paternity process and direct support payments received by the eligible unit which represent a current monthly support obligation." N.J.A.C. 10:82-4.17. Thus, the majority correctly concludes that by the state plan's own terms it characterizes as child support items other than child support assigned to the State which is collected and distributed by the IV-D agency. "Child support payments" are therefore not limited to these two types of support. These regulations demonstrate that "child support" subject to the disregard provision is not restricted to payments assigned to the State and passed through the IV-D agency.
The Division contends that its interpretation of "child support" subject to the $50 disregard is entitled to deference because (a) it has consistently interpreted "child support" to exclude dependents' benefits; (b) it has particular expertise in reading, understanding and evaluating provisions of the Social Security Act; and (c) it is interpreting its own regulations.
In construing statutes, courts may consider any contemporaneous and practical interpretations of the statute by the agency charged with administering it. Boyle v. Riti, 175 N.J. Super. 158, 166 (App.Div. 1980); 3A Sands, Sutherland Statutory Construction, § 72.03 at 582 (4th ed. 1986). However, courts are not bound by an administrative agency's interpretation of statutes, particularly when that interpretation is inconsistent with the legislative intent or plain meaning of the statute. Barone v. Dept. of Human Serv., 210 N.J. Super. 276, 285 (App.Div. 1986), aff'd. 107 N.J. 355 (1987). Nevertheless, due deference must be given to the view and regulations of an administrative agency charged with implementing a legislative enactment. Ibid.
The amount of judicial weight afforded the agency's interpretation may differ depending on the type of interpretation and circumstances of the case. Substantial weight is given to an *37 agency's initial attempt at interpreting and implementing a new regulatory concept and an administrative interpretation reasonably relied upon by a party. 2A Sands, Sutherland Statutory Construction, § 49.05 at 362 (4th ed. 1984). By contrast, less weight is afforded to an interpretation which appeared only in an agency's internal communications, nonadversary proceedings, and informal guidelines, than to interpretations that are formally established as regulations. Id. at 362-63.
Nothing in the record demonstrates that the Division has consistently included or excluded dependents' benefits as "child support" for disregard purposes. There are no regulations, internal agency guidelines, agency opinions or other such informal declarations showing that it has consistently taken this position. As noted in the dissenting opinion in Todd v. Norman, 840 F.2d, 608, 614 (8th Cir.1988), reh. and reh. en banc den. 840 F.2d 608 (8th Cir.1988), the rule of deference to agency interpretations has no application when the agency has never promulgated a definition of the term "child support payments" and no evidence is presented demonstrating that the agency previously addressed the issue at hand.
Appellant argues that dependents' benefits may be properly classified as "child support benefits," because their purpose is to provide financial support when parents are deceased or disabled and unable to support their children by working. See Jimenez v. Weinberger, 417 U.S. 628, 634, 94 S.Ct. 2496, 2500, 41 L.Ed.2d 363, 369 (1974); Davis v. Richardson, 342 F. Supp. 588, 593 (D.Conn. 1972), aff'd 409 U.S. 1069, 93 S.Ct. 678, 34 L.Ed.2d 659 (1973).
We have held that dependents' benefits satisfy a divorced father's child support obligation since they are not gratuities, but were earned during unemployment by the parent as insurance payments substituting for lost earning power. Potter v. Potter, 169 N.J. Super. 140, 148 (App.Div. 1979). The overwhelming majority of state courts that have considered the impact of dependents' benefits on parents' court-ordered child *38 support obligations have agreed. Todd v. Norman, supra (840 F.2d at 614) (Lay, C.J., dissenting). Justice Lay noted in his dissent in Todd that child support and other family law matters are the province of the States. Ibid., citing Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1, 11 (1979) and U.S. v. Yazell, 382 U.S. 341, 352-353, 86 S.Ct. 500, 506-507, 15 L.Ed.2d 404, 410-411 (1966). He then suggested that child support under the disregard provision should mean monies used and officially considered as child support payments satisfying a state-ordered support obligation for a dependent child. Todd v. Norman, supra (840 F.2d at 615).
A Georgia appellate court based its interpretation of the federal disregard provision on state domestic relations cases. Ledbetter v. Foster, 180 Ga. App. 696, 350 S.E.2d 31, 33 (Ct. App. 1986), cert. den. (Sup.Ct. Nov. 26, 1986) (no citation). Since Georgia courts had already defined child support, in family law actions, as including Social Security dependents' benefits and since nothing in the AFDC law precluded a similar definition of child support in the disregard provision, dependents' benefits were ruled subject to the disregard in Georgia.
I recognize that federal policy underlying the Social Security laws is unrelated to state or local laws on marital or family matters flowing from the state's power to regulate domestic relations. Davis v. Richardson, supra (342 F. Supp. at 593).
However, Stroop v. Bowen, 870 F.2d 969 (4th Cir.1989), is in my view the better reasoned opinion. There, the court said:
We perceive no distinction between support derived directly from a father's wages and support provided indirectly through Title II payments. In both cases, it is the father, a wage earner, whether current or past, who provided the support. The money to support the child comes directly through the father or indirectly through insurance he earned when working. [Id. at 974].
The Division argues that the state family law cases cited by appellant are not persuasive because the courts there merely concluded that dependents' benefits could be a substitute or credit for child support payments. In Todd v. Norman, supra *39 (840 F.2d 608), Justice Lay in his dissent made the following cogent criticism of the majority's distinction in that case:
This superficial distinction ignores that ... the other states find that child insurance benefits are designed to meet the current needs of dependent children of disabled non-custodial parents. These courts all reach the logical and equitable conclusion that any monies provided the dependent child by or derived from the absent parent constitute support. [840 F.2d at 615].
The Division also relies on the view taken by the majority in Todd v. Norman, supra (840 F.2d at 611), that Congress recognized a difference between "Social Security benefits" and "child support" payments. The Todd court cited the legislative history of 42 U.S.C.A. § 602(a)(38) which revised the definition of a family unit and which spoke "in terms of `Social Security benefits' and `child support' as separate and distinct sources of income." 840 F.2d at 611, citing S.Rep. No. 494, 97th Cong., 2d Sess. 47, reprinted in 1982 U.S.Code Cong. & Admin. News 781, 823. It therefore concluded that child support payments, as used in the Social Security Act, were not equivalent to dependents' benefits. Ibid.
However, this rationale was addressed, and in my view refuted in Stroop v. Bowen, supra (870 F.2d 969) which concluded that the suggested inference was "simply too tenuous to support the [Secretary of the federal Department of Health and Human Services'] interpretation which is not only irrational but also implicates serious equal protection concerns." 870 F.2d at 974.
Respondent also raises the prospect that if appellant's position is adopted, "any payment which conceivably could be considered as `child support' under state law must also trigger the $50 bonus payment," including any form of annuity, trust fund, or life insurance policy proceeds. This, too, was addressed in the Todd dissent:
Whether a non-custodial parent's private annuity or insurance benefit paid to a dependent child would qualify as `child support' would depend upon the circumstances surrounding the parties involved. If the benefits are neither used, nor officially considered as child support payments, then the non-custodial parent still has to pay whatever support payments are due. If, however, the non-custodial parent used such proceeds as satisfaction of his state-ordered support *40 obligation for a dependent child, there is no logical reason why the $50 disregard could not apply. [840 F.2d at 615].
State courts have recognized dependents' benefits as a form of child support. They derive from the work and earning capacity of a parent, constituting a form of earnings insurance. The courts' task in interpreting separate provisions of a single Act is to give the Act "the most harmonious, comprehensive meaning possible in light of the legislative policy and purpose." Stroop v. Bowen, supra (870 F.2d at 973), citing Weinberger v. Hynson, Westcott & Dunning, Inc., 412 U.S. 609, 631-632, 93 S.Ct. 2469, 2484, 37 L.Ed.2d 207, 224 (1973). It is contradictory to treat dependents' benefits like child support under one part of the Social Security Act (i.e., when computing AFDC applicants' income to determine eligibility) and not in another (the disregard provision). Stroop v. Bowen, supra.
Further, courts should construe statutes so as to avoid serious doubts about their constitutionality. Int'l. Ass'n of Machinists v. S.B. Street, 367 U.S. 740, 749, 81 S.Ct. 1784, 1789, 6 L.Ed.2d 1141, 1150 (1961). The distinction drawn by the Division has been criticized and avoided because it raises equal protection questions about the disregard provision. See Stroop v. Bowen, supra (870 F.2d at 974); Jackson v. Mullany, 708 F. Supp. 483, 490 (N.D.N.Y. 1989); Davis v. Sallee, No. Civ. 4-86-27, slip op. at 5, 1986 WL 25435 (E.D.Tenn. Oct. 10, 1986); In re D'Antignac, No. 16444-86, slip op. at 2 (Sup.Ct.N.Y. Oct. 3, 1986); Todd v. Norman, supra (840 F.2d at 613) (Lay, C.J., dissenting). If possible, federal statutes are to be construed so as to avoid serious doubt as to their constitutionality. Int'l Ass'n of Machinists v. S.B. Street, supra (367 U.S. at 749, 81 S.Ct. at 1789). Interpretation of a disregard provision so as to include dependents' benefits as child support payments is consistent with this principle. Ibid.
Since neither the federal nor the state statutes or regulations define "child support payments," that term should be given its ordinary and well-understood meaning. State v. Walker, 216 N.J. Super. 39, 42 (App.Div. 1987), certif. den. 108 N.J. 179 *41 (1987). Where, however, the words of a statute under interpretation are ambiguous, courts may resort to extraneous sources to ascertain the legislative intent. Sources of the Legislature's intent are the language of the statute, concepts of reasonableness and legislative history. Coletti v. Union Cty. Freeholder Bd., 217 N.J. Super. 31, 35 (App.Div. 1987).
In ascertaining the purpose and intent of the [Legislature], courts consider contemporaneous events surrounding enactment of the statute and look to the legislative history of the act or amendment. Courts will also review subsequent related legislation and consider comments of legislators made during enactment. [3A Sands, Sutherland Statutory Construction, § 72.03 at 582 (4th ed. 1986)].
The plain language of the federal disregard provision makes the disregard applicable to "any child support," without limitation. Further, the sparse legislative history of the provision supports a broad definition of the disregard. The legislative history of the disregard provision consists only of the following: "[a] monthly disregard of $50 of child support received by a family is established. The disregard is applied at eligibility determination and benefit calculation. The provision is effective October 1, 1984." 130 Cong.Rec. H6369, 6752 (June 22, 1984). As noted in Todd v. Norman, supra (840 F.2d at 611), this "leaves us without an inkling of Congress' intent in defining `child support payments.'"
The Division's argument that resort should be had to the legislative history of 42 U.S.C.A. § 657(b), which, it contends, is the predecessor to the present disregard provision, is unpersuasive.
The first mention of a child support disregard provision was in the Social Security Amendments of 1974, Pub.L. No. 93-647, Pt. B, Sec. 101, 88 Stat. 2337 (1974). Congress thereby enacted 42 U.S.C.A. § 657 which established how child support benefits collected by the state IV-D agency were to be distributed. Subpart (a) of that provision concerned support collected between July 1, 1975 and September 30, 1976, and provided that 40% of the first $50 of such child support was to be paid to the corresponding family without decreasing the amount of its *42 AFDC benefits. 42 U.S.C.A. § 657(b) governed child support payments collected after September 30, 1976 and provided that the State keep all of the support payments it collected. Hence, this was the first Social Security provision requiring a child support disregard for the purposes of calculating the amount of AFDC benefits.
Section 657(b) was amended by the Deficit Reduction Act of 1984, Pub.L. No. 98-369, § 2640, 98 Stat. 494 (1984) (DEFRA), and it now requires that $50 of child support collected by the State after September 30, 1986 is to be paid to the family without affecting its eligibility for assistance or decreasing the amount of its AFDC benefits. 42 U.S.C.A. § 657(b)(1).
The legislative history of 42 U.S.C.A. § 657(a) shows that it was intended to act as an incentive for AFDC families to cooperate with the IV-D agency when it tried to locate and collect support payments from an absentee parent. S.Rep. No. 1356, 93rd Cong., 2d Sess. 23, reprinted in 1974 U.S.Code Cong. & Ad. News 8133, 8155.
It is inaccurate to characterize the distribution provision (42 U.S.C.A. § 657(a)) as the predecessor of the disregard provision (42 U.S.C.A. § 602(a)(8)(A)(vi)). The above history shows that § 657(a) (as enacted in 1974, and which expired in 1976) was the predecessor to the current distribution provision, § 657(b), as amended by DEFRA in 1984. It does not appear that there was any prior statutory provision similar to § 602(a)(8)(A)(vi).
Nevertheless, respondent argues that since there is no meaningful legislative history of the present disregard provision, it is appropriate to consider "other statutes on the subject, previous to or contemporary with enactment of the statute being construed," i.e. the 1974 version of § 657(a). The Division finds support for this notion in Todd v. Norman, supra (840 F.2d 608):
The closest statutory reference in pari materia is an earlier form of the child support disregard, formerly codified in large part at 42 U.S.C. § 657 (1976). The legislative history of that statute leaves little doubt that the child support disregard was established to encourage AFDC recipients to assist the state in *43 establishing paternity and collecting child support. [Citation omitted]. The district court, after imputing the same purpose to the present statute, indicated that no such incentive is intended for AFDC recipients whose children receive Child's Insurance Benefits, because the state is barred by law from collecting such benefits. We are persuaded by the district court's reasoning. The problem addressed by the child support disregard is the collection of child support from absent parents. Child's Insurance Benefits simply are not part of that problem. [Footnote omitted]. [840 F.2d at 611-612].
However, the Todd rationale was not only rejected by the dissenting judge in that opinion, but also by all other state and federal courts that have considered it, including the most recent federal court of appeals case, Stroop v. Bowen, supra (870 F.2d 969). As noted in Stroop:
It is axiomatic that the intent of one Congress cannot be inferred from the activities of another Congress. United States v. Price, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960). In 1974, AFDC recipient cooperation was not a prerequisite to receiving benefits. Also, at that time social security payments were not a factor in determining a family's eligibility for AFDC, so there was no occasion for Congress to consider whether the disregard should also apply to such payments. In 1984 when the current provision was adopted, cooperation was a prerequisite, and AFDC recipients had existing incentives to cooperate in ensuring that child support payments were made. Moreover, amendments to 42 U.S.C. § 658 have enhanced the states' incentives for tracking down nonresident parents who are delinquent in making child support payments. The Secretary's argument that the $50 disregard serves as a financial impetus is substantially eviscerated by legislative acts of the past 14 years, and it is unsupported by the legislative history of the current [disregard] provision. [870 F.2d at 973-974].
Moreover, the Stroop court noted that the United States Supreme Court offered a different rationale for the current disregard provision:
The only pronouncement about the purpose of the current disregard provision has come from the Supreme Court which reasoned that the disregard of the first $50 paid by a father serves to mitigate the burden of the changes wrought by the DEFRA amendments. Bowen v. Gilliard, 483 U.S. 587, 107 S.Ct. 3008, 3013, 97 L.Ed.2d 485 (1987). [Id. at 974].
In Bowen v. Gilliard, 483 U.S. 587, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987), the Supreme Court upheld the constitutionality of another DEFRA amendment which required that all members of a family living in the same home must be counted as part of the family unit filing for AFDC benefits. Prior to that amendment, AFDC applicants could exclude from the filing *44 unit family members with other sources of income (such as children receiving child support from a noncustodial parent) to avoid disqualifying the entire family from AFDC or reducing the amount of its benefits. 483 U.S. at 589-590, 592-594, 107 S.Ct. at 3011, 3013, 97 L.Ed.2d at 493-494, 496. In upholding the constitutionality of those amended provisions, the Supreme Court noted that by forcing families to include children receiving child support in the filing unit, the 1984 DEFRA amendments effectively reduced many AFDC families' total income. However,
[t]he burden of the change was mitigated somewhat by a separate amendment providing that the first $50 of child support collected by the State must be remitted to the family and not counted as income for the purpose of determining its benefit level. [Id. 483 U.S. at 594, 107 S.Ct. at 3013-3014, 97 L.Ed.2d at 496-497, citing 42 U.S.C. § 602(a)(8)(A)(vi)].
The Federal Court of Appeals in Stroop noted that although the Gilliard court's ruling did not specifically apply to dependents' benefits, "it is apparent that disregard of the first $50 of social security payments, which are received in lieu of payments made by a father, serves the same purpose." 870 F.2d at 974.
Families receiving dependents' benefits, no less than families receiving other sorts of child support, need the relief offered by the disregard provision:
AFDC families with children who receive social security payments are burdened by the DEFRA amendments no less than families with children who receive payments from noncustodial fathers. No rational basis exists for according one class of families the mitigating benefit of the disregard provision while depriving another arguably indistinguishable class of families of the same benefit. See Todd v. Norman, 840 F.2d at 616 (Lay, C.J., dissenting). This sort of unreasoned distinction raises equal protection concerns. See Clark v. Jeter, 486 U.S. 456, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988). [Stroop v. Bowen, supra (870 F.2d at 975)].
Other courts that have addressed the issue have reached the same result. See Jackson v. Mullany, supra 708 F. Supp. at 490) (adopting the rationale in Carter v. Bowen, CA 86-0398 (E.D. Dec. 21, 1987), aff'd sub nom. Stroop v. Bowen, 870 F.2d 969 (4th Cir.1989)); Davis v. Sallee, supra (slip op. at 5) (the AFDC program was intended to give some measure of assistance for needy children, and the disregard provision was *45 intended to increase the numbers of persons eligible for AFDC benefits and the actual amount of benefits they receive); McBee v. Sallee, No. Civ. 2-86-103, slip op. at 4 (E.D.Tenn. Nov. 26, 1986) (following the Davis rationale).
Implying the intent of one Congress from that of another is "hazardous". Russello v. U.S., 464 U.S. 16, 27, 104 S.Ct. 296, 302, 78 L.Ed.2d 17, 26-27 (1983); U.S. v. Price, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334, 340 (1960); Stroop v. Bowen, supra (870 F.2d at 973-974). "It is the intent of the Congress that enacted [the section] ... that controls." Oscar Mayer & Co. v. Evans, 441 U.S. 750, 758, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609, 617 (1979), quoting Teamsters v. U.S., 431 U.S. 324, 354 n. 39, 97 S.Ct. 1843, 1864 n. 39, 52 L.Ed.2d 396 (1977). Hence, reliance on the legislative history of the 1974 disregard provision offers no reliable indicia of the 1984 Congress' intent in enacting 42 U.S.C.A. § 602(a)(8)(A)(vi).
Absent reference to the 1974 legislative history, there is no historical basis for the view advocated by the Division that the disregard provision was intended to motivate AFDC families to cooperate with IV-D agencies in collecting child support assigned, collected and distributed by those agencies. Additionally, as the Stroop court noted, the 1984 changes to state and federal AFDC statutes expressly require families receiving AFDC to cooperate in the process of obtaining child support under threat of severe sanctions. Stroop v. Bowen, supra (870 F.2d at 974); 42 U.S.C.A. § 602(a)(26)(B); 45 C.F.R. § 232.12; N.J.A.C. 10:81-11.2, 11.5. These provisions diminish, if not obviate, the importance of the $50 disregard as an "incentive" to cooperate with child support collection agencies.
As articulated by the Gilliard court, the $50 disregard provision was intended to ameliorate the impact of other DEFRA amendments on AFDC families. 483 U.S. at 592-595, 107 S.Ct. at 3013-3014, 97 L.Ed.2d at 496-497. This impact is the same whether the children in the families are receiving dependents' benefits or other types of child support payments from their *46 noncustodial parents. Therefore, the term "any child support payments" in the disregard provision should be interpreted as including children's dependents' benefits. This interpretation would also avoid serious doubts about the constitutionality of the disregard provision and is therefore the favored construction.
Consequently, the legislative intent of the disregard provision (as gleaned from its history) and case law principles also support reversal of the Division's decision.
"Public policy is a manifest action of the values, norms and ideals of a society." 2A Sands, Sutherland Statutory Construction, § 56.01 at 627 (4th ed. 1984). Although public policy is a vague and indefinite concept, "it often serves as a shorthand reference for a wide variety of factors which may influence and condition the formation, validation, interpretation and application of legislation." Ibid. Evidentiary sources of public policy include federal and state constitutions and constitutionally valid legislation. Id., § 56.02 at 629 and § 56.04 at 635. Courts have also considered "extra-legal indicia of public policy," such as public sentiment and feeling, the conditions giving rise to the legislation and the effect that a possible interpretation will have upon society. Id., § 56.05 at 637.
Appellant cites no support for her argument that there is a public policy of encouraging AFDC families to maximize their income from other sources. As the Todd court noted, this would be a rather oblique reason for providing the child support disregard. Todd v. Norman, supra (840 F.2d at 612 n. 3). Absent further and more persuasive elaboration of her theory, there is no compelling basis to reverse the Division's decision on this theory.
Appellant also contends that the Division's refusal to apply the child support disregard to Social Security dependents' benefits violates "state and federal constitutional equal protection," citing U.S. Const., Amend. XIV, and apparently relying on general language in N.J. Const. (1947), Art. I, par. 1. She *47 argues that there is no rational basis for the distinction the Division has drawn between child support paid by a working parent and child support paid by the Social Security disability insurance program on behalf of a disabled parent. Appellant cites a number of cases touching on this issue. Stroop v. Bowen, supra (870 F.2d at 975); Jackson v. Mullany, supra (708 F. Supp. at 489-490); Davis v. Sallee, supra (slip op. at 5); In re D'Antignac, supra (slip op. at 2); Todd v. Norman, supra (840 F.2d at 613) (Lay, C.J., dissenting) ("Such disparate classification is clearly irrational and raises serious constitutional questions."). I would not reach the equal protection issue in view of the availability of a disposition on statutory grounds. "[A] court should not reach and determine a constitutional issue unless absolutely imperative in the disposition of the litigation." Donadio v. Cunningham, 58 N.J. 309, 325-326 (1971), citing Anto v. Weaver, 39 N.J. 418, 428 (1963).
I would reverse and remand for recalculation of appellant's AFDC benefits to allow the $50 monthly disregard.