PER CURIAM.
This Court granted certiorari review to address the issue whether a juvenile court may exercise jurisdiction under § 12-15-114, Ala.Code 1975, a provision of the Alabama Juvenile Justice Act of 2008, § 12-15-101 et seq., Ala.Code 1975 (“the 2008 AJJA”), over a termination-of-parental-rights claim when the grounds for the termination do not involve a child alleged “to have committed a delinquent act, to be dependent, or to be in need of supervision.”

Facts and Procedural History

In July 2012, L.J. (“the mother”) filed a petition in the Limestone Juvenile Court to establish paternity of the child at issue in this case. In that same petition, the mother also sought to terminate the parental rights of C.C. (“the father”). In the petition, the mother stated that the father had previously filed an action in the circuit court and that that court had ordered a DNA test that established the father’s paternity but that the father had withdrawn the petition before the court had issued an order establishing paternity. In her petition, the mother alleged that the father had abandoned the child.
The father, initially acting pro se, filed an answer generally denying the allegations in the mother’s petition, except for the paternity of the child. Because the issue was not in dispute, the juvenile court entered an order determining that the father was the biological father of the child. The father, acting through counsel, filed an amended answer and a counterclaim seeking joint legal custody of the child, with physical custody awarded to the mother; visitation rights; and establishing child support pursuant to Rule 32, Ala. R. Jud. Admin.
Following ore tenus proceedings, at which the mother, the father, and the mother’s mother testified, the juvenile court entered an order finding that the father had “abandoned” the child as that term is defined in § 12-15-301, Ala.Code 1975, and by § 12-15-319, Ala.Code 1975. The juvenile court terminated the father’s parental rights, implicitly denying the father’s counterclaim. The father timely appealed to the Court of Civil Appeals. The juvenile court certified the record as ade *188 quate for an appeal pursuant to Rule 28(A)(1)(a), Ala. R. Juv. P.
A majority of the Court of Civil Appeals held that, under §. 12-15-114, the juvenile court lacked jurisdiction over a termination-of-parental-rights claim except insofar as that claim arises out of a proceeding involving .an allegation that the child as to whom parental rights are being terminated is dependent, delinquent, or in need of supervision. C.C. v. L.J., 176 So.3d 183 (Ala.Civ.App.2013). Because the mother’s petition for the termination of the father’s parental rights did not arise out of a dependency, delinquency, or child-in-need-of-supervision proceeding, the Court of Civil Appeals held that the juvenile court lacked subject-matter jurisdiction and that its judgment was void. Specifically, the Court of Civil Appeals held that when the legislature repealed what was § 12-15-30(b), Ala.Code 1975, removing language giving juvenile courts exclusive jurisdiction over all termination-of-parental-rights proceedings and replacing it with more limited jurisdiction over only- certain ■ types of terminatión-of-parental-rights proceedings (i.e., those arising out of'dependency, delinquency, or child-in-need-of-supervision proceedings), the legislature' intended to narrow the juvenile court’s jurisdiction in termination-of-parental-rights Cases. Because the mother, who was the legal custodian of the child, had not alleged that the child was dependent, i.e., without a parent willing to provide for the care, support, or education of the child, the Court of Civil Appeals concluded that the juvenile court lacked,jurisdiction over her petition. The Court of Civil Appeals dismissed the appeal as being from a void judgment.
' Two members of the Court of Civil Appeals dissented; opining that the enactment of the 2008 AJJA did not alter the formerly prevailing law under which a parent could seek to terminate the parental rights of the other parent in the juvenile court. C.C. v. L.J., 176 So.3d at 185 (Pittman, J., dissenting, with Thompson, P.J., joining). The dissent notes that former § 26-18-5, Ala.Code 1975, a provision of the Child Protection Act (“the CPA”), which was amended and carried forward in the 2008 AJJA as § 12-15-317, Ala.Code 1975, now provides that “ ‘any ... parent... may file a petition to terminate the parental rights of a parent or parents of a child,’” 176 So.3d at 185, and that, although the proper forum is not set out in § 12-15-317, the remaining sections of the 2008 AJJA evidence an intent-by the legislature to provide the juvenile court with jurisdiction over termination-of-parental-rights proceedings filed by a parent seeking to terminate the rights of the other parent. The dissent states:
“Did the enactment of the [2008] AJJA alter the formerly prevailing law under which parents could seek termination of parental rights in the juvenile court? Former § 26-18-5 has been carried forward into the [2008] AJJA and codified at Ala.Code 1975, § 12-15-317, which states that ‘any ... parent ... may file a petition to terminate the parental rights of a parent .or parents of a child.’ Although the proper forum for filing such a petition is not therein stated, the Code sections that follow leave no doubt that the legislature intended that juvenile courts maintain their former exclusive jurisdiction to hear such matters. Taken together, the succeeding sections of the [2008] AJJA provide (a) for service of process by publication to be' ordered in particular circumstances by the juvenile court (§ 12-15-318), (b) that termination of parental rights may be ordered by the juvenile •court upon-a proper showing of grounds therefor (§ 12-15-319), and (c) that additional actions are authorized to be un *189 dertaken by the juvenile court upon a determination that parents are unwilling or unable to act as parents (§ 12-15-320). ' I glean from the [2008] AJJA’s repetitious references to the juvenile court in connection with disposition of cases in which termination of parental rights is sought, including cases in which a parent seeks such termination, that the legislature had no intent to deprive the juvenile court of its former exclusive jurisdiction to adjudicate a termination-of-parental-rights claim such as that advanced by the mother in this case.”
176 So.3d at 185-86 (Pittman, J., dissenting). . The mother petitioned this Court for a writ of certiorari. We reverse and remand.

Discussion

The 2008 AJJA, which became effective January 1, 2009, revised and reorganized the CPA, § 26-18-1 et seq., Ala. Code 1975. The CPA governed cases involving the termination of parental rights. The 2008 AJJA also revised and renumbered an earlier version of the Juvenile Justice Act. Former § 12-15-30(b)(2), for example, has been revised and is currently set out in § 12-15-115(a)(l) and (a)(2), Ala. Code 1975. Essentially, the 2008 AJJA merged the CPA and the former Juvenile Justice Act.
Under the former Juvenile Justice Act, § 12-15-30(a) provided that, the juvenile court had- exclusive original jurisdiction over proceedings in which a child was alleged to be dependent, delinquent, or in need of supervision. Former § 12-15-30(b)(6) further provided that the juvenile court also had exclusive original jurisdiction over proceedings for the “termination of parental rights.”
The CPA was enacted “to provided meaningful guidelines to be used by the juvenile court in cases involving the termination of parental rights.” § 26-18-2 (repealed). Under the CPA, § 26-18-5 set out who could file a petition to terminate parental rights: “A petition may be filed by any/public or private licensed child-placing agency or- parent, with permission of the court, or any interested party.” § 26-18-5 (repealed). The CPA was. the first time the legislature had allowed a parent- to' initiate such an action. In Ex parte Johnson, 474 So.2d 715 (Ala.1985), this Court held that former § 26-18-5 evidenced a legislative intent to allow a parent to initiate a termination petition:
“[Tjhere 4s no ■ logical -reason to allow only the state to file a petition to have parental rights terminated. Why should a parent, who has direct knowledge and familiarity with a situation, be required to go to. the state to obtain such a result, when it would be more direct for the parent to file-the petition?”
474 So,2d at 717.
Under the CPA, a finding of dependency was not required when one parent sought to-terminate the parental rights of another parent. In Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990), we stated:
“[W]hen one parent seeks to terminate the other parent’s parental rights, a ‘finding of dependency1 is not required. As stated above, if a ‘finding of dependency were a requisite element of proof, thfe following illogical result could arise: The petitioning parent, who is adequately caring for the child, would have to prove that he or she is not providing adequate- Care for the child and, therefore, could -then be estopped from bringing such an action. We hold, therefore, that, when one parent seeks to terminate the other parent’s parental rights, a ‘finding of dependency’ is not required, and the trial court should determine whether the petitioner has met the statutory burden of proof and whether that *190 termination is in the child’s best interest, in light of the surrounding circumstances.
“The two-prong test that a court must apply in a parental rights termination case brought by a custodial parent consists of the following: First, the court must find that there are grounds for the termination of parental rights, including, but not limited to, those specifically set forth in § 26-18-7 [now repealed]. Second, after the court has found that there exist grounds to order the termination of parental rights, the court must inquire as to whether all viable alternatives to a termination of parental rights have been considered.”
In 2008, when the legislature merged the former Juvenile Justice Act with the CPA and revised arid renumbered both in the 2008 AJJA, the legislature set out the juvenile court’s jurisdiction in §§ 12-15-114, 12-15-115, and 12-15-116, Ala.Code 1975.
Section 12-15-115(a) provides that the juvenile court shall have original jurisdiction in certain civil cases, such as cases involving (1) the removal of disabilities of nonage, (2) judicial consent to marry, (3) commitments, (4) transfers from the probate court in adoption cases, (5) waivers of parental consent in abortion cases, (6) paternity, (7) modification of support, custody, or visitation in previously filed parentage cases, (8) enforcement ■ of spousal support, (9) proceedings under the Uniform Child Custody Jurisdiction and Enforcement Act, and (10) grandparent visitation, when it is part of a juvenile case. Section 12 — 15—115(b) provides that the juvenile court will have original jurisdiction when emergency medical treatment is necessary and when the child has been suspended or expelled from a public school. Section 12-15-115 is a revision and renumbering of former §§ 12-15-30(b)(l), (b)(2), (b)(5), and 12-15-30(c). Section 12-15-116 is a revision and renumbering of former § 12-15-31 and addresses the juvenile court’s original jurisdiction in criminal cases involving juveniles.
Section 12-15-114 is the provision of the 2008 AJJA that is before us in the present case; it is a revision and renumbering of former § 12-15-30(b)(6). Section 12-15-114 provides:
“(a) A juvenile court shall exercise exclusive original jurisdiction of juvenile court proceedings in which a child is alleged to have committed a delinquent act, to be dependent, or to be in need of supervision. A dependency action shall not include a custody dispute between parents. Juvenile cases before the juvenile court shall be initiated through the juvenile court intake office pursuant to this chapter.
“(b) A juvenile court shall not have jurisdiction over any delinquent act committed by an individual before his or her 18th birthday for which a petition has not been filed before the individual reaches 21 years of age, except when the delinquent act is an offense having no statute of limitation as provided in Section 15-3-5C, Ala.Code 1975].
“(c) A juvenile court shall also exercise exclusive original jurisdiction of proceedings arising out of the above juvenile court proceedings, including, but not limited to, each of the following:
“(1) Proceedings pursuant to the Interstate Compact on Juveniles and the Interstate Compact on Placement of Children pursuant to Chapter 2 of Title 44.
“(2) Proceedings for termination of parental rights, as this term is defined *191 in subdivision (10) of Section 12-15-301[, Ala.Code 1975].”[1]
We now turn to whether a juvenile court may exercise jurisdiction under § 12-15-114 over a termination-of-parental-rights petition when the ground for seeking the termination does not involve a child alleged “to have committed a delinquent act, to be dependent, or to be in need of supervision.”
Section 12-15-114(a) grants the juvenile court exclusive original jurisdiction over juvenile proceedings where the child is alleged to be dependent, delinquent, or in need of supervision. Section 12-15-114(a) states that “a dependency action shall not include a custody dispute between parents.” Section 12-15-114(c) goes on to provide that the juvenile court shall also have exclusive original jurisdiction over proceedings “arising out of the above juvenile court proceedings,” i.e., dependency, delinquency, and child-in-need-of-supervision proceedings, as set out in subsection (a). Former § 12 — 15—30(b)(6) gave the juvenile court jurisdiction over all termination-of-parental-rights proceedings. Construing the language in § 12-15-114, the Court of Civil Appeals concluded that the legislature had limited the juvenile court’s jurisdiction in termination-of-parental-rights proceedings to those cases “arising out of’ dependency, delinquency, and child-in-need-of-supervision cases. Because the mother did not allege that the child was dependent, i.e., without a fit parent to provide care, the Court of Civil Appeals held that she, as a custodial parent, could not seek termination of the other parent’s parental rights in the juvenile court.
“We note that ‘[t]he intent of the Legislature is the polestar of statutory construction.’ Siegelman v. Alabama Ass'n of School Bds., 819 So.2d 568, 579 (Ala. 2001). See also Richardson v. PSB Ar mor, Inc., 682 So.2d 438, 440 (Ala.1996); Jones v. Conradi, 673 So.2d 389, 394 (Ala.1995); Ex parte Jordan, 592 So.2d 579, 581 (Ala.1992). ‘[T]he starting point for all statutory interpretation is the language of the statute itself,’ and ‘[i]f the statutory language is clear, no further inquiry is appropriate.’ Federal Reserve Bank of Atlanta v. Thomas, 220 F.3d 1235, 1239 (11th Cir.2000). ‘If the statutory language is ambiguous, however, courts may examine extrinsic materials, including legislative history, to determine [legislative] intent.’ Id. It is also true that ‘[i]n attempting to ascertain the legislative intent of a particular statute or provision therein, it is permissible to look to the law as it existed prior to such statute’s enactment.’ Reeder v. State ex rel. Myers, 294 Ala. 260, 265, 314 So.2d 853, 857 (1975). In that connection, ‘courts [also] consider contemporaneous events surrounding enactment of the statute.’ Baylor v. New Jersey Dep’t of Human Servs., Div. of Pub. Welfare, 235 N.J.Super. 22, 41, 561 A.2d 618, 628 (1989), aff'd, 127 N.J. 286, 604 A.2d 110 (1990).”
Pinigis v. Regions Bank,, 977 So.2d 446, 450-51 (Ala.2007).
In Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc., 746 So.2d 966, 969 (Ala.1999), this Court stated: “[W]hen circumstances surrounding the enactment of a statute cast doubt on the otherwise clear language of the statute, we *192 must look to other factors in determining legislative intent.” This Court further stated in Archer Daniels:
“As the plaintiff correctly points out, § 6 — 5—60[, Ala.Code 1975,] is not, on its face, limited to transactions involving intrastate commerce. We hasten to add, however, that there is no language in § 6-5-60 that conclusively indicates an intent on the Legislature’s part to regulate transactions involving the shipment of goods through interstate commerce. Because the. language of § 6-5-60, standing alone, is not conclusive on the question of legislative intent, and because other factors, including the legislative history of Alabama’s antitrust statutes, as well as the state of the law at the time of their enactment, cast doubt on the original intent of the Legislature, we find it necessary to look beyond the language of the statute.”
746 So.2d at 973.
•The foregoing rationale applies to this Court’s determination of legislative intent with respect to § 12-15-114. As our earlier discussion of the history of the 2008 AJJA indicates, it was well settled prior to the enactment of the 2008 AJJA that juvenile courts had exclusive original jurisdiction over' all termination-of-parental-rights petitions. This included a petition filed by a parent seeking to terminate the parental rights of the other parent of the child, based on our decision in Ex parte Beasley in which we held that a finding of dependency was not required in such a case. We stated in Beasley that it would be illogical for a parent; who is adequately caring for the child, to have to prove that he or she is not providing adequate care (i.e., that the child is dependent) in order to bring such an action, because the petitioning parent would then be estopped from bringing the action. In light of the history of the 2008 AJJA, if the legislature had intended for the circuit court, as a court of general jurisdiction, to now have jurisdiction over termination petitions filed by one parent agqinst the other parent, it would not have done so by legislative silence. Additionally, it is unlikely that the legislature would place jurisdiction over termination petitions in two different courts.
It is also unlikely that the legislature, in providing that the juvenile court has jurisdiction of termination petitions arising out of dependency, delinquency, or child-in-need-of-supervision proceedings, intended to prohibit one parent from filing a petition seeking to terminate the parental rights of the other parent. As Judge Pittman noted in his dissent in C.C. v. L.J., the legislature, in adopting the entirety of the 2008 AJJA, provided that a parent may bring a petition to terminate the parental rights of the other parent of the child. § ,12-15-317. If the legislature intended to foreclose a parent from bringing a termination petition by first requiring an allegation of dependency, it woulcl not have also provided for the right to bring such a termination petition in the 2008 AJJA.
. It is also -unlikely that the legislature intended to foreclose a parent from filing a termination petition against another parent, but then to allow a parent to file a termination petition against the other parent when a stepparent wants to adopt the child. In S.N.W. v. M.D.F.H., 127 So.3d 1225 (Ala.Civ.App.2013), the stepfather of the child filed a petition in the probate court seeking to adopt the child. After the case was transferred to the juvenile court, the mother filed a petition to terminate the biological father’s parental rights in order for the stepfather to adopt the child. The father argued that the juvenile court lacked subject-matter jurisdiction under § 12-15-114 to terminate his parental rights because the underlying action did *193 not begin as a dependency, delinquency, or child-in-need-of-supervision proceeding. Without referring to § 12-15-115(a)(4), which provides the juvenile court with original jurisdiction over ' proceedings transferred from the probate court, the Court of Civil Appeals held that § 26-10A-3, Ala.Code 1975, a provision- of the Alabama Adoption Code, provides that the probate court has jurisdiction over adoption proceedings and that it has jurisdiction to transfer a case to the juvenile court for the limited purpose of terminating parental rights. The Court of Civil Appeals held that because § 26-10A-3 does not mandate that the termination-of-parental-rights proceeding be predicated on a dependency proceeding or a finding of de: pendency, the juvenile court had jurisdiction to entertain the mother’s petition to terminate the father’s parental rights so as to allow the stepfather to adopt the child. We see no reason for the legislature to have provided that a parent be allowed to terminate the parental rights of the other parent simply because a stepparent adoption is involved, but not allow a parent to bring a termination proceeding when there is no pending stepparent adoption.
It is unlikely that the legislature intended for a noncustodial parent to be able to bring a termination petition against the custodial parent while not allowing a custodial parent to bring such a petition. In T.K. v. M.G., 82 So.3d 1 (Ala.Civ.App. 2011), a majority of the Court of Civil Appeals held that a father, who was not the custodial parent, could bring a dependency petition against the custodial mother invoking the jurisdiction of the juvenile court tinder § 12-15-114. The Court of Civil Appeals concluded that for the purpose of jurisdiction of -the juvenile court, having a fit noncustodial parent who is willing and able to care for the child does not preclude a juvenile court from finding that the child is dependent. It does not follow that the legislature would prohibit a custodial parent from filing a termination petition while allowing a noncustodial parent to do so. The 2008 AJJA defines a “dependent child” to include a child who “is in- need of care or supervision” and “[w]ho is without.a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.” § 12-15-102(8)a.2„ Ala.Code 1975. So long as the parent is fit, it should make no difference whether that parent currently has custody^
We note that, in the present case, the mother filed a petition in the juvenile court seeking to determine paternity of the child. Section 12-15-115(a)(6) provides that the juvenile court has original jurisdiction over petitions to establish ’parentage pursuant to the Alabama Uniform Parentage Act, § 26-17-1 et seq., Ala.Code 1975. Section 12-15-317 of the 2008 AJJA allows a parent to file a petition to terminate parental rights, and § 12-15-319 sets out the grounds for termination, which include abandonment, which the mother alleges here; If the juvenile court had jurisdiction over the paternity petition under § 12-15-115 and § 12-15-317 allows a parent to file a petition to terminate the parental rights of the othér parent, then the juvenile court should have jurisdiction to address the mother’s termination petition without a finding of dependency. See S.N.W. v. M.D.F.H., supra.
While this appeal was pending, the legislature adopted Act No. 2014-350, Ala. Acts 2014, which amended § 12-15-114 to read as follows:
“(c) A juvenile court shall also exer.cise exclusive jurisdiction over each of the following:
[[Image here]]
“(2) Proceedings for termination of parental rights.” ;
*194 In enacting Act No. 2014-350, the legislature stated:
“Section 2. The Legislature finds that its original intent in the adoption of Act 2008-277, the Alabama Juvenile Justice Act, was for a juvenile court to exercise exclusive original jurisdiction in all termination of parental rights proceedings. The amendatory language to Section 12-15-114, Code of Alabama 1975, provided in Section 1, is intended to be curative and shall apply retroactively for the purpose of ratifying and confirming the exercise of original jurisdiction of the juvenile court to hear and adjudicate termination of parental rights cases filed in juvenile court on and after January 1, 2009, and prior to the effective date of this act [April 8, 2014]. Any order of a juvenile court issued while exercising jurisdiction pursuant to this section during that time shall be deemed valid in absence of an adjudication on appeal to the contrary.
“Section 3. The provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, that declaration shall not affect the part which remains.
“Section 4. This act shall become effective immediately following its passage and approval by the' Governor, or its otherwise becoming law.”
The 2014 amendments to § 12-15-114 bear out the legislature’s intent to not change the juvenile court’s jurisdiction over all termination-of-parental-rights cases.
‘“When statutes are amended or replaced by succeeding legislation, the Legislature often seeks to clarify previously ambiguous provisions. These subsequent acts by the Legislature must be considered in trying to determine the intent of the legislation. 73 Am.Jur.2d, Statutes, § 178. McWhorter v. State Bd. of Registration for Prof'l Eng’rs & Land Surveyors, 359 So.2d 769, 773 (Ala.1978).”
T-Mobile South, LLC v. Bonet, 85 So.3d 963, 979 (Ala.2011).
Based on the foregoing, we conclude that a juvenile court may exercise jurisdiction under § 12-15-114 over a termination-of-parental-rights claim when the subject of the termination was not a child alleged “to have committed a delinquent act, to be dependent, or to be in need of supervision.” As Judge Pittman noted in his dissent, the 2008 AJJA did not alter the formerly prevailing law under which a parent could seek termination of parental rights in the juvenile court. Moreover, the legislature clearly expressed its intent in its 2014 amendments that under the 2008 AJJA the juvenile court have exclusive original jurisdiction over all termination-of-parental-rights proceedings. Accordingly, we reverse the judgment of the Court of Civil Appeals and remand the cause for that court to consider any arguments that may have been pretermitted by the Court of Civil Appeals’ analysis.
REVERSED AND REMANDED.
MOORE, C.J., and PARKER, MAIN, WISE, and BRYAN, JJ., concur.
STUART and MURDOCK, JJ., concur specially.
BOLIN and SHAW, JJ., concur in the result.

. As the result of an amendment effective October 1, 2010, § 12-15-301(10) now defines the term “reasonable efforts,” which refers to efforts to preserve a family unit. It does not refer to termination proceedings, which is now defined in § 12-15-301(14). Section 12-15-301(14) defines termination of parental rights as “[a] severance of all rights of a parent to a child.”