840 F.2d 608
 56 USLW 2507
 Elizabeth TODD and Sara Starr, Individually and on behalf of
all other persons similarly situated, Appellants,
v.
Nancy A. NORMAN, Commissioner, Iowa Department of Human
Services and Otis R. Bowen, Secretary, United
States Department of Health and Human
Services, Appellees.
 No. 87-1251.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 1, 1987.
Decided March 2, 1988.
Rehearing and Rehearing En Banc Denied May 20, 1988.
 
 John S. Allen, Des Moines, Iowa, for appellants.
 Daniel W. Hart, Asst. Atty. Gen., Des Moines, Iowa, and Robert E. Keith, Washington, D.C., for appellees.
 Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.
 MAGILL, Circuit Judge.
 
 
 1
 This appeal raises the question whether Social Security Child's Insurance Benefits ("Child's Insurance Benefits") paid pursuant to 42 U.S.C. Sec. 402(d) are "child support payments" within the meaning of 42 U.S.C. Sec. 602(a)(8)(A)(vi) (the "child support disregard").
 
 
 2
 I. BACKGROUND.
 
 
 3
 Elizabeth Todd and Sarah Starr ("appellants") are recipients of Child's Insurance Benefits and Aid to Families with Dependent Children ("AFDC") benefits. The Iowa Department of Human Services ("Iowa"), in determining AFDC eligibility and grant levels, refused to "disregard" the first $50 of Child's Insurance Benefits that appellants received on behalf of their children. Appellants filed a class action lawsuit to challenge this policy.
 
 
 4
 Congress established the AFDC program to provide aid to children who are needy because of a parent's death, absence or incapacity. 42 U.S.C. Sec. 606(a). Although state participation in the program is not mandatory, states which elect to participate must follow federal law when administering their AFDC program. Congress mandates that participating states consider all income and resources available to the recipient family before determining the need-based amount of assistance payable under the AFDC program. 42 U.S.C. Sec. 602(a)(7). Thus, any income received by AFDC recipients is set off dollar-for-dollar from the applicable benefit level. However, a portion of various categories of "income" must be "disregarded," or not counted as family income, before the state makes a "need" determination. 42 U.S.C. Sec. 602(a)(8)(A).
 
 
 5
 Once the state has made this need determination, a benefit award is calculated, and AFDC payments are made to the AFDC recipient. In exchange for the AFDC payment, the AFDC recipient is required to assign to the state all rights to child support payments from the non-custodial parent. 42 U.S.C. Sec. 602(a)(26)(A). The state then collects the child support payments from the non-custodial parent. See 42 U.S.C. Sec. 651 et seq.
 
 
 6
 The Deficit Reduction Act of 1984, Pub.L. No. 98-369, Sec. 2640, 98 Stat. 494, 1145-46 (1984), introduced two new provisions to the AFDC program relating to the child support assignment described above. One provision, codified at 42 U.S.C. Sec. 657(b)(1), requires the state to distribute to the AFDC recipient the first $50 of monthly child support payments it collects from the noncustodial parent. This $50 distribution is not to affect eligibility or decrease assistance. The other provision, which is at issue here, provides that the state must:
 
 
 7
 * * * disregard the first $50 of any child support payments received in such month with respect to the dependent child or children in any family applying for or receiving aid to families with dependent children (including support payments collected and paid to the family under 457(b) [42 U.S.C.S. Sec. 657(b) ] * * *.
 
 
 8
 42 U.S.C. Sec. 602(a)(8)(A)(vi).
 
 
 9
 Child's Insurance Benefits are paid to the dependent child or children of an individual (here the non-custodial parent) entitled to disability insurance benefits under the Social Security Act. 42 U.S.C. Sec. 402(d). Under the Iowa AFDC policy, Child's Insurance Benefits are not considered "child support payments." If Iowa treated the Child's Insurance Benefits as "child support payments," and "disregarded" them, then appellants' accountable income would be reduced by $50 per month. Each appellant would therefore receive an additional $50 per month in AFDC benefits. Appellants contend that Iowa violates the Social Security Act by counting Child's Insurance Benefits as family income, and thus shortchanges them by $50 per month.
 
 
 10
 After appellants began this action, Iowa joined Otis Bowen, Secretary of the United States Department of Health and Human Services (the "Secretary"), seeking indemnification for any judgment which might be entered against it. The district court[1] entered an order granting appellants' motion for class certification. The case was submitted to the district court on cross-motions for summary judgment. On December 18, 1986, the district court entered an order granting defendants' motion for summary judgment. This appeal followed. We affirm.
 
 
 11
 II. DISCUSSION.
 
 
 12
 In determining the scope of 42 U.S.C. Sec. 602(a)(8)(A)(vi), the child support disregard, we look first to its language. If the statutory language is unambiguous, in the absence of a "clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The language at issue here is "child support payments." Unfortunately, Congress has not defined this term in the child support disregard, or anywhere else in the statutory scheme. Appellants nonetheless contend that the plain meaning of "child support payments" includes Child's Insurance Benefits because, like child support, Child's Insurance Benefits are attributable to the work effort of the non-custodial parent, and are used exclusively for the support and maintenance of that parent's child or children. These factors, appellants assert, make Child's Insurance Benefits payments indistinguishable from all other forms of child support.
 
 
 13
 Appellants' argument goes too far, however. If accepted, it would expand the meaning of "child support payments" far beyond its contemporary denotation as a non-custodial parent's legal obligation to contribute to the support and maintenance of the children. For example, proceeds from virtually any insurance or annuity program that are attributable in part to the work effort of the parent could be considered "child support," once payment to the dependent children begins. Indeed, under appellants' criteria, part of every parent's income could be deemed "child support," a result that would transform a carefully crafted legislative concept into a generality.
 
 
 14
 Other distinctions militate against appellants' interpretation. Child's Insurance Benefits are payable regardless of any legal obligation of the parent to pay child support.[2] Child's Insurance Benefits are not calibrated to the needs of the child, nor are they based solely upon the non-custodial parent's "income," two typical determinants of a child support assessment. Though Child's Insurance Benefits are in some sense "earned" by the parent, they are paid by the federal government. Because the duty to pay child support generally cannot be transferred to a third party, see 59 Am.Jur.2d, Parent and Child, Sec. 71 (1987), it follows that payments made by a third party, even if earned in part by a parent, cannot be "child support payments" within the ordinary meaning of that term.
 
 
 15
 More importantly, we are persuaded that Congress recognized a distinction between "child support payments" and Child's Insurance Benefits in other provisions of the AFDC program. The legislative history of 42 U.S.C. Sec. 602(a)(38)--the revised AFDC family unit definition--speaks in terms of "Social Security benefits" and "child support" as separate and distinct sources of income. See, e.g., S.Rep. No. 494, 97th Cong., 2d Sess. 47, reprinted in 1982 U.S.Code Cong. & Admin.News 781, 823. In short, what guidance Congress has provided for this "plain meaning" analysis leads to the conclusion that "child support payments" and Child's Insurance Benefits are not equivalent under the Social Security Act.
 
 
 16
 Appellants urge the application of Iowa law to determine what constitutes "child support payments." Appellants point to Potts v. Potts, 240 N.W.2d 680 (Iowa 1976), and a raft of other cases to support their contention that Child's Insurance Benefits are considered "child support payments" under Iowa law. Appellants construe the cases overbroadly, however. Our review indicates only that, under extenuating circumstances, some state courts find it equitable to treat Child's Insurance Benefits as a substitute for child support payments. See, e.g., Potts, 240 N.W.2d at 681. Others have reached a contrary result. Nibs v. Nibs, 625 P.2d 1256 (Okla.1981); Fowler v. Fowler, 156 Conn. 569, 244 A.2d 375 (1968); Chase v. Chase, 74 Wash.2d 253, 444 P.2d 145 (1968). If Child's Insurance Benefits simply were "child support payments," the lengthy discourse on equity each of these courts engages in would be unnecessary.
 
 
 17
 Even if the case law were more persuasive, we would be hesitant to encroach upon the state's traditional prerogatives to decide family law questions by determining what constitutes "child support payments," particularly where no Iowa court has directly addressed the issue. We are also mindful that, when construing a federal statute, we must strive for an interpretation that will result in consistent application. The lack of consistency among state courts as to whether Child's Insurance Benefits are "child support payments" confirms that the Social Security Act would have a varied and inconsistent meaning throughout the several states if we relied on state law. Accordingly, we decline to determine whether Iowa law includes Child's Insurance Benefits within the definition of "child support payments," and instead hold that Child's Insurance Benefits do not fall within the plain meaning of "child support payments" as set out in the child support disregard. Nevertheless, bearing in mind the Supreme Court's admonition that there is "no errorless test for identifying or recognizing 'plain' or 'unambiguous' language," United States v. Turkette, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981), we turn to the next signpost of statutory construction, the legislative history of the child support disregard.
 
 
 18
 Appellants claim that the legislative history of the child support disregard does not support Iowa's decision to exclude Child's Insurance Benefits from the definition of "child support payments." However, the scant legislative history relating to the disregard leaves us without an inkling of Congress' intent in defining "child support payments." Under such circumstances, it is appropriate to consider "[o]ther statutes on the subject, previous to or contemporary with enactment of the statute being construed." Sands, Sutherland Statutory Construction, Sec. 48.03 (4th ed. 1984). The closest statutory reference in pari materia is an earlier form of the child support disregard, formerly codified in large part at 42 U.S.C. Sec. 657 (1976). The legislative history of that statute leaves little doubt that the child support disregard was established to encourage AFDC recipients to assist the state in establishing paternity and collecting child support. See S.Rep. No. 1356, 93rd Cong., 2d Sess. 23, reprinted in 1974 U.S.Code Cong. & Admin.News 8133, 8155. The district court, after imputing the same purpose to the present statute, indicated that no such incentive is intended for AFDC recipients whose children receive Child's Insurance Benefits, because the state is barred by law from collecting such benefits. We are persuaded by the district court's reasoning. The problem addressed by the child support disregard is the collection of child support from absent parents. Child's Insurance Benefits simply are not part of that problem.[3]
 
 
 19
 Our conclusion is supported by the Secretary's interpretation of the child support disregard. Perhaps appreciating the complexity of the Social Security Act, Congress gave the Secretary broad authority to prescribe standards in applying its provisions. This conferral of authority recognizes that the Secretary is uniquely qualified to interpret provisions of the Social Security Act and also insulates his administrative interpretations from a judicial override, unless that interpretation is "manifestly contrary to the statute." Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Here, the Secretary was required to define "child support payments," while giving effect to related sections of the Social Security Act. These sections mandate (1) that "all child support payments" must be assigned to the state, 42 U.S.C. Sec. 602(a)(26)(A), and (2) that Child's Insurance Benefits cannot be assigned to any third party, such as the state, 42 U.S.C. Sec. 407. In keeping with the rule that separate provisions of a single act must be construed as consistent with each other, Weinberger v. Hynson, Westcott & Dunning, Inc., 412 U.S. 609, 631-32, 93 S.Ct. 2469, 2484, 37 L.Ed.2d 207 (1973), the Secretary chose an interpretation which reconciles potentially inconsistent provisions of the Act by excluding Child's Insurance Benefits from the definition of "child support payments." While the Secretary has never specifically announced that Child's Insurance Benefits are not "child support payments," he has consistently maintained that only child support payments assigned to the state trigger the $50 disregard. A harmonious construction of the Act requires the Secretary to conclude that the term "child support payments", as used in the child support disregard, does not include Child's Insurance Benefits.[4]
 
 
 20
 Appellants dispute the Secretary's reading of the statute by emphasizing language in the child support disregard which suggests the disregard of child support other than that assigned to, and collected by, the state under 42 U.S.C. Sec. 657(b). The child support disregard provides that a state must:
 
 
 21
 * * * disregard the first $50 of any child support payments received in such month with respect to the dependent child or children in any family applying for or receiving aid to families with dependent children (including the support payments collected and paid to the family under a 457(b) [42 U.S.C.S. Sec. 657(b) ] * * *.
 
 
 22
 42 U.S.C. Sec. 602(a)(8)(A)(vi). Appellants contend that the parenthetical language indicates that Congress intended to include unassignable Child's Insurance Benefits within the meaning of "child support payments." We disagree.
 
 
 23
 A more plausible explanation of the parenthetical language exists; one that gives the Social Security Act its most comprehensive and coherent meaning in light of the entire legislative scheme. See Clark v. Uebersee Finanz-Korporation, A.G., 332 U.S. 480, 488, 68 S.Ct. 174, 177, 92 L.Ed. 88 (1947). This explanation is found in regulations promulgated by the Secretary. See 45 C.F.R. Secs. 233.20(a)(3)(v), 302.31(a)(3), 303.80. Despite the imperative that all child support payments be assigned to the state, instances arise where child support payments are made directly to families despite assignment, or where child support payments are made before the assignment becomes effective. In response, the Secretary has issued regulations to guide the states in their treatment of these child support payments. These regulations establish alternative procedures by which the state can collect child support paid directly to the AFDC family. See 45 C.F.R. Secs. 233.20(a)(3)(v), 302.31(a)(3), 303.80. They also show that the state can collect child support payments outside of 42 U.S.C. Sec. 657(b), and thus provide a ready explanation for the parenthetical language in the amendment.
 
 
 24
 Appellants argue from these alternate procedures that the child support disregard should also apply to Child's Insurance Benefits. This is no answer. Application of the child support disregard to support paid to a family before or despite an assignment is consistent with the requirement that child support be assigned, while application of the child support disregard to Child's Insurance Benefits not assignable by law violates the assignability requirement. At bottom, appellants are unable to offer a persuasive alternative explanation that squares the language of the child support disregard with either the requirement that child support payments be assigned to the state, or the bar on assignment of Child's Insurance Benefits.
 
 
 25
 III. CONCLUSION.
 
 
 26
 We are unpersuaded that Congress intended the words "child support payment" to apply to Child's Insurance Benefits. Appellants, in essence, attribute to Congress an intent to bring provisions of the same statutory scheme into opposition with one another. We decline to make such an attribution in light of the plain meaning of "child support payments" and the Secretary's credible and coherent construction of the child support disregard. Accordingly, the decision of the district court is affirmed.
 
 
 27
 LAY, Chief Judge, dissenting.
 
 
 28
 I respectfully dissent.
 
 
 29
 It is difficult for me to reason that Congress did not intend the disregard for "child support payments" as used in 42 U.S.C. Sec. 602(a)(8)(A)(vi) to include any support payment made by or for an absent parent for the use and benefit of the "dependent child." Monies expended to support a dependent child come either directly from the non-custodial parent based upon earnings from work or indirectly through social security insurance benefits earned while working. Although the use of social security insurance benefits as child support may be a different manner of payment, the nature of the funds is the same. I can ascertain no purpose that Congress could possibly have sought to achieve by denying an AFDC child the $50 disregard because the absent parent is disabled and can no longer work while providing the child with the additional income when the parent is able to work. Such disparate classification is clearly irrational[1] and raises serious constitutional questions.
 
 
 30
 The government concedes that no legislative history defines "child support payment" but reasons that the purpose of the 1974 Act, which initially created a disregard,[2] was to provide a greater incentive to a custodial mother to obtain child support from the child's father. This obviously was one of the purposes for the legislation providing the $50 disregard, see S.Rep. No. 1356, 93rd Cong., 2d Sess. 23, reprinted in 1974 U.S.Code Cong. & Admin.News 8133, 8155, but the direct effect, and presumably a principal purpose of the 1984 amendment, which increased the amount of the disregard to $50, was both to broaden the number of families eligible for AFDC payments and to increase the actual amount of benefits received by eligible families. The Supreme Court expressly recognized that the $50 disregard provision effectuates this purpose by mitigating an eligible family's reduction in income. Bowen v. Gilliard, 483 U.S. ----, 107 S.Ct. 3008, 3013, 97 L.Ed.2d 485 (1987).
 
 
 31
 Although an Act may serve many purposes, in construing legislation, it is our duty to provide ordinary meaning to ordinary words. Burns v. Alcala, 420 U.S. 575, 580-81, 95 S.Ct. 1180, 1184-85, 43 L.Ed.2d 469 (1975). The majority's interpretation defeats the intent of the child support disregard provision by decreasing the amount of family income designated exclusively for dependent children. It also serves to emphasize "disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." Ross v. Moffitt, 417 U.S. 600, 609, 94 S.Ct. 2437, 2443, 41 L.Ed.2d 341 (1974).
 
 
 32
 The majority also relies upon the general deference given to agency interpretations. Such a rule has no application here, however. The Secretary has never promulgated a definition of the term "child support payments" that would exclude social security child's insurance benefits, and no evidence has been presented to demonstrate that the agencies previously addressed the question presented in this lawsuit.[3] The agencies involved in this case should not be granted deference because the agencies' interpretation has been neither consistent nor longstanding, Bowen v. American Hosp. Ass'n, 476 U.S. 610, 106 S.Ct. 2101, 2122 n. 34, 90 L.Ed.2d 584 (1986) (citations omitted) but, rather, is an ad hoc response to litigation. See Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).
 
 
 33
 It is long-settled that child support and other family law matters are the province of the states. See Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979); United States v. Yazell, 382 U.S. 341, 352-53, 86 S.Ct. 500, 506-07, 15 L.Ed.2d 404 (1966). The majority overlooks the fact that an overwhelming number of state courts who have passed on the issue find that an absent parent's child support obligation is fulfilled by insurance benefits paid by social security on behalf of the parent.[4] Iowa, the plaintiffs' home state, is in accord. See Potts v. Potts, 240 N.W.2d 680 (Iowa 1976). Plaintiffs argue that because Congress has not defined the phrase "any child support payment," and Iowa has concluded that social security child's insurance benefits meet a parent's child support obligation, the child support disregard applies to social security child's insurance benefits. Yet the majority distinguishes Potts because the Iowa court characterized the insurance benefits as a "substitute." This superficial distinction ignores that Iowa and the other states find that child insurance benefits are designed to meet the current needs of dependent children of disabled non-custodial parents. These courts all reach the logical and equitable conclusion that any monies provided the dependent child by or derived from the absent parent constitute support. Federal courts should respect and abide by the state courts' interpretation of what constitutes child support.
 
 
 34
 The majority also concludes that social security child's insurance benefits "cannot be 'child support payments' within the ordinary meaning of that term * * * [b]ecause the duty to pay child support generally cannot be transferred to a third party * * *." Although it is true that AFDC recipients cannot assign their rights to collect social security benefits to the state, the explicit language of the statute indicates that Congress has not limited child support payments to those payments that are assigned to the state. The statute requires that a state:
 
 
 35
 disregard the first $50 of any child support payments received in such month with respect to the dependent child or children in any family applying for or receiving aid to families with dependent children (including support payments collected and paid to the family under section 457(b) and [42 U.S.C.S. section 657(b) ]) * * *.
 
 
 36
 (Emphasis added). The parenthetical language makes clear that Congress has not limited the disregard to those payments that are assigned to the state; the disregard applies to "any child support payments." Non-assignability does not deprive the benefits earned by the disabled parent of their character as child support payments. Moreover, because direct payments are sometimes made outside of the IV-D system (agencies set up to establish and enforce child support obligations on behalf of AFDC recipients) the state is sometimes relieved of its obligation to collect support payments. These direct payments, although not collected by the state, are nevertheless still considered support payments. See 45 C.F.R. Secs. 233.20(a)(3)(v)(B), 302.31(a)(3) and 303.80. Furthermore, these benefits are counted by the state in determining the AFDC grant and result in a dollar-for-dollar reduction in the grant.[5]
 
 
 37
 Lastly, the government urges that a broad definition of child support payments would open the door to allow any private insurance benefit or annuity to qualify for the disregard. The government also urges that under plaintiffs' definition child support would include payments made to the dependent child on behalf of the disabled live-in father. The majority expands this argument stating that "every parent's income could be deemed 'child support.' " I believe this analysis ignores the fact that the entire statutory scheme under Chapter 7 relates to support provided by the "absent" parent. See 42 U.S.C. Secs. 602-676. Insurance benefits received by the dependent child of a disabled live-in parent, whether used for the support of a child, are clearly not within the contemplation of the statute any more than the general earnings of a working parent. However, I do not believe it follows that private insurance or annuity benefits received by virtue of the disability of an absent parent should be exempted from the disregard. Whether a non-custodial parent's private annuity or insurance benefit paid to a dependent child would qualify as "child support" would depend upon the circumstances surrounding the parties involved. If the benefits are neither used, nor officially considered as child support payments, then the non-custodial parent still has to pay whatever support payments are due. If, however, the non-custodial parent used such proceeds as satisfaction of his state-ordered support obligation for a dependent child, there is no logical reason why the $50 disregard could not apply.
 
 
 38
 We deal here only with the child's insurance benefits of a disabled non-custodial parent. I respectfully submit it is self-contradictory for the State of Iowa to weigh social security benefits in determining AFDC eligibility and yet treat such benefits differently under a different part of the statute.
 
 
 
 [1]
 The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa
 
 
 [2]
 Child's Insurance Benefits can be paid to a child living with his parents, or even after the parents' death. Both are situations in which the obligation to pay child support does not exist
 
 
 [3]
 Appellants argue that the $50 incentive might encourage AFDC recipients to apply for Child's Insurance Benefits. The paternity determination made when awarding Child's Insurance Benefits could then be used by the state to get a child support decree. We are not convinced Congress intended such an oblique application of the $50 incentive
 
 
 [4]
 This approach is borne out by 26 U.S.C. Sec. 6402(c), which offsets past-due child support against a tax refund. The definition of past-due support in the pertinent federal regulations limits such support qualifying for offset to that support which is assignable to the state. 26 C.F.R. Sec. 301.6402-5(b)(2)(i). Thus it appears that Congress has consistently recognized the need to distinguish "child support" from other sources of income, like Child's Insurance Benefits, which are not assignable to the state
 
 
 [1]
 The district court found such a disparate classification rational because children with absent fathers who receive child's insurance benefits are in a different class than children with working fathers who will not provide support. I must respectfully disagree. The $50 disregard provides the incentive for the custodial parent to collect support from the absent parent. There exists incentive for both families to obtain as much disregard support as possible irrespective of whether the non-custodial parent is healthy and working, or disabled and entitled to social security benefits. For the dependent child of the absent disabled parent to get less than the dependent child of the absent working father makes little sense
 
 
 [2]
 Under the 1974 legislation only 40% of the first $50 was to be disregarded
 
 
 [3]
 The regulations cited by the government discuss "support" which is assignable but the regulations cannot be all inclusive since the express language of the statute includes payments made directly to the family. In any event, a particularized meaning of "child support" is not discussed
 
 
 [4]
 See Binns v Maddox, 57 Ala.App. 230, 327 So.2d 726 (1976); Bowden v. Bowden, 426 So.2d 448 (Ala.Ct.App.1983); Lopez v. Lopez, 125 Ariz. 309, 609 P.2d 579 (Ct.App.1980); Cash v. Cash, 234 Ark. 603, 353 S.W.2d 348 (1962); Potter v. Potter, 169 N.J. Super. 140, 404 A.2d 352 (App.Div. 1979); Ledbetter v. Foster, 180 Ga.App. 696, 350 S.E.2d 31 (1986); Perteet v. Sumner, 246 Ga. 182, 269 S.E.2d 453 (1980); Potts v. Potts, 240 N.W.2d 680 (Iowa 1976); Andler v. Andler, 217 Kan. 539, 538 P.2d 649 (1975); Board v. Board, 690 S.W.2d 380 (Ky.1985); Folds v. Lebert, 420 So.2d 715 (La.Ct.App.1982); Cohen v. Murphy, 368 Mass. 144, 330 N.E.2d 473 (1975); Mooneyham v. Mooneyham, 420 So.2d 1072 (Miss.1982); McClaskey v. McClaskey, 543 S.W.2d 832 (Mo.Ct.App.1976); Schulze v. Jensen, 191 Neb. 253, 214 N.W.2d 591 (1974); In re Marriage of Meek, 669 P.2d 628 (Colo. Ct.App. 1983); Mask v. Mask, 95 N.M. 229, 620 P.2d 883 (1980); Romero v. Romero, 101 N.M. 345, 682 P.2d 201 (Ct.App.1984); Children & Youth Servs. v. Chorgo, 341 Pa.Super. 512, 491 A.2d 1374 (1985); Justice v. Scruggs, 286 S.C. 165, 332 S.E.2d 106 (1985); Davis v. Davis, 141 Vt. 398, 449 A.2d 947 (1982)
 
 
 [5]
 See 42 U.S.C. Sec. 602(a)(38) (Supp. III 1985); 45 C.F.R. Sec. 206.10(a)(1)(vii) (1985); see also Gorrie v. Bowen, 809 F.2d 508 (8th Cir.1987)