Cheryl BROWN; Jeanette Hamilton, proceeding by and through her guardian ad litem, Martha Liebisch, individually, and on behalf of all similarly situated persons, Plaintiffs,

v.

Linda McMAHON, Director, California Department of Social Services, Defendant and Third–Party Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary U.S. Department of Health and Human Services, Third–Party Defendant.

No. Civ. S–87–1581 RAR.

United States District Court, E.D. California.

Oct. 11, 1989.

Curtis Child, Brian Paddock and Karen Wells, Legal Services of Northern California, Inc., Sacramento, Cal., Jeanne Molineaux, Redwood Legal Assistance, Ukiah, Cal., and Mark Greenberg and Richard Rothschild, Western Center on Law & Poverty, Inc., Los Angeles, Cal., for plaintiffs.

Mark St. Angelo, Asst. U.S. Atty., and Eileen Ceranowski, Deputy Atty. Gen., Sacramento, Cal., for defendants.

MEMORANDUM OPINION

RAMIREZ, District Judge.

PROCEDURAL AND FACTUAL BACKGROUND

On November 9, 1987, plaintiffs, recipients of Aid to Families with Dependent Children (hereinafter "AFDC"), had cause to file the above-entitled action as a class action for declaratory and injunctive relief. In essence, the complaint challenges the California Department of Social Services policy with regard to its calculation of AFDC benefit levels. *See* 42 U.S.C. § 601–676 (1982 & Supp. V 1987). Specifically, the action raises the issue of whether under the Federal Deficit Reduction Act of 1984 (DEFRA), Pub.L. No. 98–369, 98 Stat. 494 (1984), tit. 2, social security benefits to children of disabled wage earners should be considered "child support" for purposes of applying the fifty dollar ($50.00) "disregard" provision, codified at 42 U.S.C. § 602(a)(8)(A)(vi).

The procedural history of this action is as follows: after the filing of the original complaint, defendant Linda McMahon, Director of the California Department of Social Services, filed a third-party complaint against Otis R. Bowen, M.D., then Secretary of the United States Department of Health and Human Services. A stipulation and order granting class certification was filed July 22, 1988. Thereafter, on July 29, 1988, plaintiffs filed a motion for summary judgment. On August 15, 1988, third-party defendant filed a cross-motion for summary judgment. Pursuant to those motions, the parties presented oral arguments to the court after which the case was taken under submission.

## I

### Overview of the AFDC Program

The AFDC program was established by Congress to provide aid to children who are needy because of a parent's death, absence or incapacity. 42 U.S.C. § 606(a). Participation by the states in the AFDC program is optional, but if a state elects to participate it must abide by federal law in the administration of its AFDC program. *See Bowen v. Gilliard,* 483 U.S. 587, 589 n. 1, 107 S.Ct. 3008, 3011 n. 1, 97 L.Ed.2d 485 (1987); *Townsend v. Swank,* 404 U.S. 282, 290–291, 92 S.Ct. 502, 507–08, 30 L.Ed.2d 448 (1971). The amount of assistance provided to families with dependent children, (otherwise known as "family units" or "assistance units"), is determined through a state standard of need. In this regard, federal law requires that participating states consider all income and resources available to the needy family unit before making the need determination. 42 U.S.C. § 602(a)(7). Thus, as a general rule, any income received by a family unit seeking AFDC benefits is taken into account and such income reduces dollar for dollar a family unit's benefit level. However, as described more fully *infra,* under the current law, portions of certain types of income are "disregarded" or not counted as family income when the state is making its need determination. 42 U.S.C. § 602(a)(8)(A).

Once the state makes its need determination, a benefit award is calculated and AFDC payments are made to the family unit. In order to obtain benefit awards, AFDC applicants are required, *inter alia,* to assign to the state (1) all rights they have to collect child support payments and (2) all rights to other support payments from any other person including non-custodial parents. 42 U.S.C. § 602(a)(26)(A). The state then collects the child support payments from the non-custodial parent or other person obligated to support the AFDC applicant. *See* 42 U.S.C. § 651.

The Deficit Reduction Act of 1984 added three provisions to the AFDC program which affect the instant litigation. First, a "mandatory filing unit" provision requires that the income of all members of the assistance unit be included in calculating the total income of the assistance unit. 42 U.S.C. § 602(a)(38). Prior to the Deficit Reduction Act families seeking AFDC benefits could exclude from the assistance unit a family member receiving income (such as child support or social security benefits) whose income would reduce the total amount of the assistance unit's AFDC benefit award. The mandatory family unit requirement put an end to the practice of excluding family members with income in order to maximize family benefits and ensure that the income of all family members who live together and share expenses is recognized and counted as available to the family unit as a whole.

Secondly, the Deficit Reduction Act's "pass through" provision requires the state to pass through to the assistance unit the first $50.00 of support collected each month from non-custodial parents (or other persons obligated to support the AFDC applicant) without decreasing the amount of the assistance unit's AFDC benefit award. 42 U.S.C. § 657(b)(1). The pass through provision provides in relevant part:

The amounts collected as support by a State ... shall ... be distributed as follows:

(1) the first $50 of such amounts as are collected periodically which represent monthly support payments shall be paid

to the family without affecting its eligibility for assistance or decreasing any amount otherwise payable as assistance to such family during such month.

42 U.S.C. § 657(b)(1).

Finally the Deficit Reduction Act's "child support disregard" provision, specifically at issue in the instant action, provides that in making the need determination for an assistance unit, the state:

> shall disregard the first $50 of *any child support payments* received in such month with respect to the dependent child or children in any family applying for or receiving aid to families with dependent children (*including* support payments collected and paid to the family under section 657(b) of this title); ...

42 U.S.C. § 602(a)(8)(A)(vi) (emphasis added).

The parenthetical reference to the "pass through" provision of 42 U.S.C. § 657(b) makes it clear that the words "any child support payments" are to include that child support collected by the state each month from non-custodial parents or other persons obligated to support the AFDC applicant and passed through or paid to the assistance unit pursuant to § 657(b), as well as other types of child support. Thus, the legal issue before the court is whether those "other types" of child support payments include support payments received by a child in the form of social security child's insurance benefits under title II of the Social Security Act.[1]

Pursuant to title II of the Social Security Act, social security child's insurance benefits are paid to children whose parents are disabled, aged, or deceased wage earners. 42 U.S.C. § 402(d) (1982 & Supp. V 1987). Child's insurance benefits are attributable to the work effort of parent and are used exclusively for the support and maintenance of that parent's child or children. The AFDC program mandates that states treat a child's social security insurance benefits as income or resources of a member of the assistance unit when making the need determination for AFDC purposes. 42 U.S.C. § 602(a)(7)(A). However, assignment to the state or other transfer of social security benefits paid under title II is expressly prohibited. 42 U.S.C. § 407(a) (Supp. V 1987).

The Secretary has never specifically defined the terms "child support payments" within the meaning of the child support disregard provision, § 602(a)(8)(A)(vi). However, the regulations implementing the provisions of the DEFRA, published on September 10, 1984, 49 Fed.Reg. 35,586, 35,604 (*see* 45 C.F.R. §§ 232.20(a), 302.-51(b)(1) (1988)), lend support to the Secretary's present litigation posture that § 602(a)(8)(A)(vi) mandates a $50.00 disregard *only* in circumstances where child support payments have been assigned to the state and are considered "collected" by the state under § 657(b).[2]

---

1. Although this issue is one of first impression in this circuit, courts in other circuits have come to opposite conclusions. A number of courts have held that the term "any child support payments" as used in 42 U.S.C. § 602(a)(8)(A)(vi) includes a child's title II social security insurance benefits. *E.g., Carter v. Bowen*, 1988 WL 156190 No. 86–0398–R (E.D.Va. March 4, 1988), *aff'd sub nom., Stroop v. Bowen*, 870 F.2d 969 (4th Cir.1989) *reh'g denied*, May 31, 1989; *Jackson by Forrest v. Mullany*, 708 F.Supp. 483 (N.D.N.Y.1989); *Davis v. Sallee*, 1986 WL 25435 No. 4–86–27 (E.D.Tenn. Oct. 10, 1986); *McBee v. Sallee*, 1980 WL 6452 No. 2–86–103 (E.D.Tenn. Nov. 26, 1986). By contrast, the Eighth Circuit has concluded that a child's title II social security insurance benefits are not "child support" within the meaning of § 602(a)(8)(A)(vi). *Todd v. Reagen*, No. 85–300–A (S.D.Iowa Dec. 22, 1986), *aff'd sub nom.,*

*Todd v. Norman*, 840 F.2d 608 (8th Cir.1988), *reh'g en banc denied*, May 20, 1988; *Accord Baylor v. New Jersey Dep't of Human Servs.*, 235 N.J.Super. 22, 561 A.2d 618 (1989).

2. The summary of the interim final regulations implementing changes in the AFDC program mandated by the DEFRA provides, *inter alia,* that the DEFRA:

> Requires States to disregard the first $50 per month of the current monthly support obligation of any child support *collected on the family's behalf or received directly by the family* in determining AFDC eligibility and payment amounts.

49 Fed.Reg. 35,586 (1984) (emphasis added). Specifically, the interim final regulations, 49 Fed.Reg. 35,599 (1984), amended 45 C.F.R. § 232.20(a) to provide *as follows:*

> **§ 232.20  Treatment of child support collections made in the Child Support Enforce-**

The State of California, in accordance with these federal regulations and the Secretary's interpretation of § 602(a)(8)(A)(vi), does not consider social security child's insurance benefits to be "child support payments" within the meaning of the child support disregard provision. Consequently, the state does not disregard the first $50.00 of child support payments in making the need determination for an assistance unit when the source of the support payments are title II social security child's insurance benefits.

As previously indicated, plaintiffs bring this action to challenge the Secretary's interpretation of § 602(a)(8)(A)(vi), the child support disregard provision. Plaintiffs contend that the words "any child support payments" *include* support payments received by a child in the form of child's insurance benefits pursuant to title II of the Social Security Act.

## DISCUSSION

### II

### *The Statutory Language*

In interpreting the meaning of the DEFRA's child support disregard provision, 42 U.S.C. § 602(a)(8)(A)(vi), the court first attempts to determine congressional intent, employing traditional tools of statutory construction. *N.L.R.B. v. United Food & Com'l Wkrs. Union*, 484 U.S. 112, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987); *see also I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

If congressional intent can be determined, that intention is the law and the Secretary's regulations implementing the provision at issue must be fully consistent with and give effect to the legislative will. *Id.;* see *Fernandez v. Brock*, 840 F.2d 622, 631 (9th Cir.1988). If however, upon review of the statute's language, structure and legislative history, Congress' intent cannot be determined, courts will defer to the administrative agency's interpretation so long as the interpretation is rational and consistent with the statute. *N.L.R.B. v. United Food & Com'l Wkrs. Union*, 484 U.S. 112, 108 S.Ct. at 421; *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir.1987). *See also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

The starting point in determining Congress' intent is the plain meaning of the language of the statute itself. *See Fleming v. Dept. of Public Safety*, 837 F.2d 401, 405–406 (9th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 222, 102 L.Ed.2d 212 (1988). If the statutory language is unambiguous, that language is regarded as conclusive absent a clearly expressed legislative intention to the contrary. *See I.N.S. v. Cardoza–Fonseca*, 480 U.S. at 432 n. 12, 107 S.Ct. at 1213 n. 12.

■ The language at issue here are the words "any child support payments ... (including support payments collected and paid to the family under section 657(b) of this title)." 42 U.S.C. § 602(a)(8)(A)(vi). Unfortunately, Congress has failed to ex-

---

ment Program as income and resources in the Title IV–A Program.
(a) Definition. For purposes of this section, notwithstanding any other regulations in this chapter, support collections, monthly collections and support amounts for a month mean *the assigned amount that the support enforcement agency collects from an absent parent or spouse on a monthly support obligation,* less the disregarded sum under § 302.51(b)(1).
45 C.F.R. § 232.20(a) (1988) (emphasis added). The interim final regulations, 49 Fed.Reg. 35,-604–05 (1984) also amended 45 C.F.R. § 302.51(b)(1) (1988) to implement DEFRA's pass through provision, 42 U.S.C. § 657(b)(1). The amended regulation provides in relevant part:
§ 302.51 Distribution of support collections.

The State plan shall provide as follows:
(b) The amounts *collected as support* by the IV–D agency pursuant to the State plan for children and the parents of such children who are current recipients of aid under the State's title VI–A plan *and for whom an assignment under 232.11 of this title is effective* shall be distributed as follows:
(1) *Of any amount that is collected* in a month which represents payment of the required support obligation for that month, *the first $50 of such amount shall be paid to the family.* This payment may not be used in determining the amount paid, if any, to the family in paragraph (b)(3) of this section.
45 C.F.R. § 302.51(b)(1) (1988) (emphasis added).

plicitly define the term "child support payments" within the meaning of the child support disregard provision, § 602(a)(8)(A)(vi).[3] The Secretary contends that the $50.00 disregard applies *only* to those "child support payments" assigned to and collected by the state and paid to the family under § 657(b). However, a perusal of the statutory language reveals that the Secretary's interpretation of § 602(a)(8)(A)(vi) is patently inconsistent with the intent of Congress as reflected in the plain meaning of the statute's language.

First, the plain language of § 602(a)(8)(A)(vi) mandating that states disregard the first $50.00 of *"any* child support payments" does not distinguish between classes of child support payments that trigger the disregard. *See Turner v. McMahon,* 830 F.2d 1003, 1007 (9th Cir. 1987). In construing statutes, courts must give effect to the subtleties of language that Congress chose to employ, particularly where Congress has isolated sections for special consideration by way of amendment. *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 222, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986). Further, well established edicts of statutory construction require that courts reject interpretations that fail to give effect to all of the words used by Congress. *E.g., Central Montana Electric Power Co-op. v. Adm'r of Bonneville Power,* 840 F.2d 1472, 1478 (9th Cir. 1988). Thus, the word "any" when referring to "child support payments" in § 602(a)(8)(A)(vi) significantly broadens the

scope of the statute and indicates the congressional intent to include all forms of child support received by the AFDC family for the use and benefit of the dependent child.

Furthermore, contrary to the Secretary's position, the language of the statute clearly indicates that the $50.00 disregard is not limited to support payments collected and paid to the family under § 657(b), but includes other types of support payments as well. The language of the child support disregard provision mandates that states "shall disregard the first $50 of any child support payments ... (*including* support payments collected and paid to the family under section 657(b) of this title)." 42 U.S.C. § 602(a)(8)(A)(vi) (emphasis added). The ordinary meaning of the parenthetical language of § 602(a)(8)(A)(vi) makes it obvious that the words "any child support payments" are to *include not only* support payments collected and paid to the family under § 657(b), but other types of child support as well. The ordinary and obvious meaning of a phrase is not to be lightly discounted and courts must assume that the legislative purpose is expressed by the ordinary meaning of the words used. *I.N.S. v. Cardoza–Fonseca,* 480 U.S. at 431, 107 S.Ct. at 1213.

Ignoring the parenthetical language, the Secretary contends that the $50.00 disregard applies *only* to those support payments assigned to and collected by the state and paid to the family under § 657(b).[4] Explaining this interpretation,

---

**3.** Plaintiffs urge the court to apply California law to determine what constitutes "child support". However, both parties agree that the term "child support" is defined in a variety of ways in the various states. Thus, utilizing state law to define the term "child support" would give the Social Security Act a varied and possibly inconsistent meaning nationwide. When construing a federal statute, the courts must strive for an interpretation that will result in consistent application nationwide. *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 119–120, 103 S.Ct. 986, 995–96, 74 L.Ed.2d 845 (1983), *reh'g denied,* 461 U.S. 911, 103 S.Ct. 1887, 76 L.Ed.2d 815 (1983). Further, courts assume that in the absence of plain indications to the contrary, when Congress enacts a statute, it does not intend to make its application de-

pendent upon state law. 460 U.S. at 119, 103 S.Ct. at 995. Thus, the court declines to apply state law to determine the meaning of the words "any child support payments" under 42 U.S.C. § 602(a)(8)(A)(vi). *Accord Todd v. Norman,* 840 F.2d 608, 611 (8th Cir.1988).

**4.** The Eighth Circuit in *Todd v. Norman,* 840 F.2d 608 (8th Cir.1988) facing the same issue, agreed with the Secretary's position that *only* those child support payments *assigned* to and *collected* by the state trigger the $50.00 child support disregard provision. In attempting to explain the parenthetical language of 42 U.S.C. § 602(A)(8)(a)(vi), the *Todd* court points to 45 C.F.R. §§ 233.20(a)(3)(v), 302.31(a)(3) and 303.-80 (1988). These regulations guide the states in their treatment of child support payments which are made directly to the family unit de-

the Secretary merely states that the child support disregard provision, § 602(a)(8)(A)(vi), and the pass through provision, § 657(b), are co-extensive statutes which are "inextricably intertwined". In essence, the Secretary views the provisions as two sides of the same coin: the "pass through" of a $50.00 support payment collected and paid to the AFDC family under § 657(b) being the only circumstance permitting a "disregard". The Secretary's contention that the two statutes are merely co-extensive is belied by the plain meaning of the parenthetical language in § 602(a)(8)(A)(vi). Section 602(a)(8)(A)(vi) is obviously broader than § 657(b) as it "includes" support payments collected by the state and paid to the family unit under § 657(b), and is therefore not limited to those support payments. Because the Secretary's narrow reading of § 602(a)(8)(A)(vi) and § 657(b) is patently inconsistent with a plain reading of the statute's language, judicial deference to that interpretation is unwarranted. *See I.N.S. v. Cardoza–Fonseca*, 480 U.S. at 432 n. 12, 446–48, 107 S.Ct. at 1213 (no deference to agency's interpretation because plain statutory language settles the question); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. at 842–843, 104 S.Ct. at 2781–82 (no deference to administrative interpretations manifestly contrary to the statute); *Smith v. Heckler*, 820 F.2d at 1094 (court will not rubber stamp agency's construction of a statute inconsistent with statutory mandate).

Notwithstanding the statutory language to the contrary, the Secretary argues that his reading of the term "any child support payments" to include only support payments collected and paid to the AFDC family under § 657(b) must withstand plaintiffs' challenge because it is consistent with and harmonizes related sections of the Social Security Act. Those sections mandate on the one hand that *all* "child support payments" be assigned to the state, 42 U.S.C. § 602(a)(26)(A), and on the other hand that a child's insurance benefits cannot be assigned to a third party, such as the state, 42 U.S.C. § 407(a).

The Secretary's argument in this regard is only forceful if one assumes that the term "child support" has the same meaning each time the term appears in the Social Security Act. The term "child support", however, has different meanings within different provisions of the Social Security Act's complex statutory scheme. For example, 42 U.S.C. § 662(b) explicitly provides a definition of the term "child support" which, *inter alia*, makes the term "subject to and in accordance with State law". Since the Secretary is unwilling to accept this definition of the term "child support" throughout the Social Security Act, he must concede that the term "child support" has different meanings within different sections of the Act. The Ninth Circuit has long recognized that a term used in different sections of a complex statute does not necessarily carry the same meaning in each context. *See e.g., Kennecott Copper Corp. v. Train*, 526 F.2d 1149, 1154 n. 20 (9th Cir.1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976); *U.S. v. Stauffer Chemical Co.*, 684 F.2d 1174, 1185 (6th Cir.1982), *aff'd*, 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984).

---

spite assignment to the state, or are made before the assignment becomes effective. The regulations establish alternate procedures whereby the state can collect child support paid directly to the family unit. The *Todd* court reasoned that because these regulations "show that the state can collect child support payments outside of 42 U.S.C. § 657(b), [they] thus provide a ready explanation for the parenthetical language" in 42 U.S.C. § 602(a)(8)(A)(vi). *Todd*, 840 F.2d at 613.

However, the *Todd* court fails to explain why it considers such direct payment collections to be "outside" of 42 U.S.C. § 657(b). Section 657(b) merely refers to the amounts "collected as support by a State pursuant to a plan approved under this part...." Thus, these regulations may not provide a ready explanation for the parenthetical language, as the *Todd* court suggests. Moreover, even assuming such collections are considered to be "outside" of section 657(b), the improbability that Congress envisioned these two highly specific regulations to be the "other types of child support outside of 42 U.S.C. § 657(b)" makes the argument untenable.

The above examination of the statutory language thus leads inexorably to the conclusion that, contrary to the Secretary's construction, Congress intended the child support disregard provision, § 602(a)(8)(A)(vi), to apply not only to support payments collected and paid to the family unit under § 657(b) but other types of child support as well. Unfortunately, the statutory language stops short of revealing whether Congress intended these "other types" of child support to include support payments received by a child in the form of a child's title II social security insurance benefits.

### III

*Legislative History of the Child Support Disregard Provision*

Since the language of § 602(a)(8)(A)(vi) leaves open the question of what types of "child support payments" (other than support payments collected by the state and paid to the family under § 657(b)) are to be included in the operation of the DEFRA's child support disregard provision, the court turns to the statute's legislative history to glean the underlying congressional intent. Unfortunately, the statutory language at issue in the present action was added during the final conference negotiations concerning the DEFRA and there is no legislative history detailing precisely what Congress intended by the language finally adopted.

Notwithstanding the lack of explicit legislative history on point, the parties look to the legislative context surrounding the enactment of the DEFRA's child support disregard provision and the legislative history of a related statute passed by Congress in 1974 as evidence of the congressional intent underlying § 602(a)(8)(A)(vi).

The Secretary argues that the legislative history of a 1974 "pass through" provision, 42 U.S.C. § 657(a)(1) (1974), (predecessor to the DEFRA's current pass through provision, 42 U.S.C. § 657(b)(1)), is relevant to discerning Congress' intent in passing the DEFRA's child support disregard provision, 42 U.S.C. § 602(a)(8)(A)(vi).[5] Specifically, the Secretary contends that Congress had the same purpose in enacting the DEFRA's child support disregard provision as it had in passing the 1974 pass through provision, i.e., to provide an incentive for families receiving AFDC benefits to collect child support payments from non-custodial working parents. Thus, the Secretary seeks to employ the legislative history underlying the 1974 pass through provision to explain Congress' intent in passing the 1984 DEFRA's child support disregard provision.

This transfer of congressional intent provides the sole support for the Secretary's position that DEFRA's child support disregard applies only to families where the absent parent is able to work and thus make child support payments directly, and not to families where the absent parent is unable to work and the child support payments are made indirectly through a child's social security insurance benefits. The rationale for the Secretary's distinction is that families who receive child support from the absent parent indirectly, in the form of a child's social security insurance, need no incentive to collect support payments from the absent parent, as those payments are made directly by the government.

---

**5.** The purpose of the 1974 "pass through" was to provide a greater financial incentive to AFDC recipients to cooperate in the collection of child support payments from the child's non-custodial parent. *See* S.Rep. No. 1356, 93rd Cong., 2d Sess. 23, *reprinted in* 1974 U.S.Code Cong. & Admin.News 8133, 8155. In furtherance of this goal, Congress enacted the earlier pass through provision which provided that 40% of the first $50.00 collected on the monthly support obligation of non-custodial parents would be passed through to the family without affecting their AFDC eligibility. 42 U.S.C. § 657(a)(1) (1974).

AFDC family units were thus encouraged to cooperate with the state in collecting child support from an absent working parent because for each month that such support was actually collected the AFDC family received income in addition to their AFDC benefit award. The 1984 DEFRA's pass through provision is quite similar in that it provides that the first $50.00 collected on the monthly support obligation of non-custodial working parents shall be passed through to the AFDC family without affecting their AFDC eligibility. 42 U.S.C. § 657(b)(1).

Plaintiffs, on the other hand, contend that the 1984 Congress was not concerned with creating incentives for collecting child support. Rather, Congress' purpose in enacting the DEFRA's child support disregard provision was to mitigate the harsh effects of the DEFRA's mandatory filing unit provision. Under this view, the Secretary's distinction between families that receive support payments directly from an absent working parent and families that receive support payments indirectly, from an absent parent who is unable to work via child's social security insurance benefits, is wholly insupportable. Both families are equally subject to the harsh effects of the DEFRA's mandatory filing unit provision and should be equally entitled to the benefits of the $50.00 child support disregard.

■ Upon careful consideration of the well-drafted arguments by both counsel, the court is unpersuaded that Congress' intent in passing the 1974 pass through provision should be "transferred" to the 1984 passing of DEFRA's child support disregard provision. The legislative context in which the current disregard provision was passed and the available case law lead inescapably to the conclusion that Congress' purpose in passing the child support disregard provision was not, as the Secretary suggests, to provide incentives for collecting child support from non-custodial working parents. Rather, for the following reasons, the court concludes that Congress intended the DEFRA's child support disregard provision to mitigate the burden that the Act's mandatory filing unit provision was to have on AFDC families.

■ The court is unpersuaded that a transfer of congressional intent is warranted for several reasons. First, it is improper to infer the intent of the 1984 Congress from the views of an earlier Congress. It is the intent of the Congress which enacted the legislation that controls. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 758, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609 (1979); *see also United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960); *Conference of State Bank Supervisors v. Conover*, 710 F.2d 878, 884 (D.C.Cir.1983).

Second, even assuming congressional intent could properly be transferred from one Congress to another, the DEFRA's child support disregard provision has no correlate in the 1974 legislation. Although the current language of 42 U.S.C. § 657(b), the DEFRA's pass through provision, and the prior language of 42 U.S.C. § 657(a)(1) (1974) each provide for a "pass through", the issue before this court is not the meaning of the pass through provision, but rather, the meaning of the child support disregard provision. In arguing that Congress' intent underlying the 1974 pass through should be used to explain the DEFRA's child support disregard, the Secretary mistakenly assumes that the DEFRA's pass through provision and the DEFRA's child support disregard provision are one and the same. The court has previously rejected the Secretary's argument that these two provision are merely opposite sides of the same coin. Rather, the court reads these two separate provisions exactly as Congress wrote them: two separate and distinct statutory provisions, the disregard provision being broader in scope as it *includes* payments made pursuant to the pass through provision.

Third, a review of the Social Security Act's history reveals that in 1974 Congress' purpose in amending that Act was probably not the same as in 1984 when Congress passed the DEFRA amendments. When Congress enacted the 1974 amendments, the legal landscape to be amended was quite different in that the Social Security Act's statutory scheme at that time contained no incentives to ensure that child support payments were collected from non-custodial parents. The 1974 amendments created at least two means of improving parental support of AFDC family units: the earlier pass through provision, 42 U.S.C. § 657(a)(1) (1974), and mandatory assignment and cooperation provisions which required all AFDC recipients to assign to the state any support rights they had in their own behalf or on behalf of their dependents who were AFDC recipients. Social Services Amendments of 1974, Pub.L. No. 93–647, §§ 101(a)–(c), 88 Stat.

2337 (1974), *reprinted in* 1974 U.S.Code Cong. and Admin.News 2716, 2732–44. By the end of 1975, the pass through provision was phased out, and the mandatory assignment and cooperation provisions remained. Thus, unlike the statutory scheme to be amended in 1974, when Congress enacted the DEFRA amendments in 1984 the Social Security Act included assignment and cooperation requirements which had been in place for a decade to ensure that child support payments were collected.

Finally, evidence supporting the view that in passing the 1984 DEFRA's child support disregard provision Congress was not concerned with creating incentives for collecting child support is found by viewing DEFRA in the context of other legislation pending before Congress at the time. One month after enacting the DEFRA, Congress passed a separate statute which addressed a whole range of issues regarding child support enforcement. *See* The Child Support Enforcement Amendments of 1984, Pub.L. No. 98–387, 98 Stat. 1305 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 2397–78. The proposition that Congress inserted a child support "incentive" provision in the DEFRA, a bill with no other child support enforcement issues, while at the same time considering a comprehensive revision of the child support enforcement structure is simply unreasonable.

For all these reasons, the court rejects the Secretary's argument that Congress' intent in 1974, focused as it was on creating incentives for absent parents to make child support payments, should be transferred to the Congress that enacted the 1984 DEFRA's child support disregard provision. The Secretary's assumption that in passing the child support disregard provision in 1984, Congress had the same intent it had in passing the 1974 pass through provision is wholly without support.

By contrast, there is forceful evidence in the context in which the DEFRA's child support disregard provision was enacted to support the view that Congress intended the disregard provision to mitigate the effects that the Act's mandatory filing unit provision was to have on AFDC recipients. The child support disregard provision emerged from the Conference Committee that developed the final version of the Deficit Reduction Act of 1984. Neither the Senate nor the House bill contained any disregard provision. The Senate's proposed version of the DEFRA contained a mandatory filing unit provision which, as discussed *supra*, required previously excluded children to be counted as members of the assistance unit. The House bill did not contain a mandatory filing unit provision. In conference, the House acceded to the Senate's version of the DEFRA, but the section that authorized the mandatory filing unit was expanded to provide for the child support disregard provision and the pass through provision. *See* H.R. Conf. Rep. No. 861, 98th Cong., 2d Sess. (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1445, 2095. Thus, the context in which the child support disregard provision was enacted strongly suggests that Congress' purpose in passing that provision was to mitigate the harsh effects that the mandatory filing unit provision was to have on AFDC recipients.

The view that Congress intended § 602(a)(8)(A)(vi) to mitigate the effects of the mandatory filing unit provision is also supported by the Supreme Court in *Bowen v. Gilliard*, 483 U.S. 587, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987) wherein the Court made an explicit pronouncement regarding the purpose of the child support disregard provision. In upholding the constitutionality of the DEFRA's mandatory filing unit provision, the Supreme Court stated:

Because the 1984 amendments forced families to include in the filing unit children for whom support payments were being received, the practical effect was that many families' total income was reduced. *The burden of the change was mitigated somewhat by a separate amendment* providing that the first $50 of child support collected by the state must be remitted to the family and not counted as income for the purpose of determining its benefit level. *See* 42 U.S.C. § 602(a)(8)(A)(vi) (1982 ed., Supp.

III); 42 U.S.C. § 657(b)(1) (1982 ed., Supp. III).

*Bowen v. Gilliard,* 483 U.S. at 594, 107 S.Ct. at 3013 (emphasis added).

The Supreme Court has thus recognized, albeit in dicta, that the purpose of the DEFRA's child support disregard provision was to mitigate the harsh effects of the Act's mandatory filing unit provision.[6] In light of the context in which § 602(a)(8)(A)(vi) was passed and the Supreme Court's explicit pronouncement in *Bowen v. Gilliard,* 483 U.S. at 594, 107 S.Ct. at 3013, and because the Secretary's position is wholly without support, the court concludes that Congress intended § 602(a)(8)(A)(vi) to serve as a mitigating force to the DEFRA's mandatory filing unit provision.

In light of the court's conclusion that Congress enacted the DEFRA's child support disregard provision as a means of mitigating the burdens imposed by the Act's mandatory filing unit provision, the Secretary's self-serving interpretation of the phrase "any child support payments" as excluding support payments made by an absent parent in the form of a child's social security insurance benefits is both irrational and patently inconsistent with congressional intent. Certainly, the burdens imposed by the DEFRA's mandatory filing unit provision fall equally onto AFDC families where the absent parent is working and families where the absent parent is unable to work and supports the child through social security benefits that the parent earned while working. Likewise, the benefits of the $50.00 disregard must enure equally to the two classes of AFDC families. Because the Secretary's narrow reading of the statute is irrational and inconsistent with congressional intent, judicial deference to that interpretation is un-warranted. *See N.L.R.B. v. United Food & Com'l Wkrs. Union,* 484 U.S. 112, 108 S.Ct. at 421; *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. at 844, 104 S.Ct. at 2781–82; *Smith v. Heckler,* 820 F.2d at 1094.

The Secretary's final argument is that his interpretation of the term "any child support payments" should be upheld because plaintiffs' reading of the term to include child's social security insurance benefits would be at cross-purposes with the budget reduction goal of the Deficit Reduction Act. Although the Act's name implies otherwise, the Deficit Reduction Act contains a mixture of provisions only some of which serve to reduce government expenditures. In construing a statute, courts must avoid the simplistic assumption that whatever furthers the broad purposes of a statute must be the law. *See Rodriguez v. United States,* 480 U.S. 522, 525–26, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987). "[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent to assume that *whatever* furthers the statute's primary objective must be the law." *Id.* (emphasis in original). Accordingly, the court is unwilling to assume that the government's otherwise insupportable rationale for counting a child's social security benefits as "income" to the family unit, but refusing to recognize such payments as child support for purposes of the child support disregard provision, should be upheld merely because that interpretation serves the budget reduction allegedly envisioned in the Deficit Reduction Act.

---

**6.** The court recognizes that the language quoted from *Bowen* may also be read to support the Secretary's position that only child support payments "collected by the state" trigger the $50.00 disregard. However, such a reading would be in conflict with the plain meaning of the statutory language which, as discussed *supra,* "includes" and is therefore not limited to payments collected by the state. Moreover, such a reading requires an inference that the Supreme Court intended to make a specific statement regarding the scope of the $50.00 disregard provision. Since that issue was not before the Court, it is more likely that the quoted language is a general statement intended merely to indicate the purpose underlying the $50.00 disregard and pass through provisions as mitigating the burden imposed on AFDC recipients by the mandatory filing unit provision.

The court concludes that the Secretary's refusal to recognize a child's social security benefit payments as child support within the meaning of § 602(a)(8)(A)(vi) is inconsistent with both the plain meaning of the statutory language and the congressional intent underlying the statute. Congress intended the disregard for "any child support payments" to include support payments made by or for an absent parent for the use and benefit of the dependent child regardless of whether the payments come directly from the working non-custodial parent or indirectly through social security insurance benefits that parent earned while working.

For the foregoing reasons and good cause appearing therefor,

IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that third-party defendant's cross-motion for summary judgment is DENIED.

IT IS SO ORDERED.